Joseph J. PETRITES and Frances M. Petrites, Plaintiffs-Appellees,

v.

J. C. BRADFORD & COMPANY and Rowland Allen Hyde, a/k/a Ted Hyde, Defendants-Appellants.

No. 80–5156.

United States Court of Appeals, Fifth Circuit. Unit B

June 1, 1981.

MacFarlane, Ferguson, Allison & Kelly, T. Paine Kelly, Jr., Claude H. Tison, Jr., Tampa, Fla., for defendants-appellants.

Terry Smiljanich, Stephen C. Chumbris, St. Petersburg, Fla., for plaintiffs-appellees.

Before FAY and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

Plaintiff Joseph Petrites brought this action for securities fraud against the brokerage firm of J. C. Bradford & Company and their salesman Rowland Hyde.[1]  The jury

---

\* District Judge of the Northern District of Alabama, sitting by designation.

1. Petrites brought five counts in his amended complaint: a count for rescission for violation of Fla.Stat. § 517.12; a fraud count under Rule 10b–5 promulgated under the Securities Ex-

change Act of 1934, 15 U.S.C. § 78j and 17 C.F.R. § 240.10b–5; a fraud count for violation of various rules of the New York and American Stock Exchanges and the National Association of Securities Dealers; a fraud count under Fla. Stat. § 517.301; and a count of common law fraud. The trial judge withheld ruling on the

found for Petrites, awarding him $30,000 actual damages, $16,000 punitive damages from J. C. Bradford & Company, and $7,000 punitive damages from Hyde. Defendants challenge this verdict on several grounds. We affirm.

This case involves an allegation of "churning." "Churning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests." *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 324 (5th Cir. 1981). *See* 17 C.F.R. § 240.15c1–7(a). *See generally* Annot. 32 A.L.R.3d 635 (1970). Petrites is a pilot with Eastern Airlines, and a naval reserve officer. He met Hyde, also a naval reserve officer, while attending naval reserve meetings. According to Petrites' testimony, which the jury credited, he asked Hyde to buy some stock for him for long term appreciation and dividend income. In 1975 Hyde opened an account for Petrites; at Petrites' instruction the account was in the name of his mother Frances Petrites. Soon thereafter Petrites also signed a form opening an account in his own name.

Although Petrites had told Hyde to "purchase some decent stocks and just sit on 'em," Hyde in fact managed the accounts as speculative discretionary accounts. Thus between February and September there were ninety-eight transactions in the two accounts. In addition, Hyde set the accounts up as margin accounts and engaged in the purchase and sale of short term call options, volatile transactions unsuitable for Petrites' investment goal. During this period almost half of Hyde's income on commissions came from Petrites' accounts, although he had over seventy other active accounts under his control. Petrites finally froze the accounts in September.

Appellants' first contention is that plaintiff may not recover under the Securities Exchange Act because he failed to show that he exercised due diligence. They argue that Petrites received statements reporting each transaction, and that he signed both account contracts and an options agreement.

■ A plaintiff is barred from recovery in a 10b–5 action if he was guilty of recklessness or worse; mere negligence does not suffice. *Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1122 (5th Cir. 1980); *Dupuy v. Dupuy*, 551 F.2d 1005, 1020 (5th Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977). We think the jury could reasonably find that Petrites was not reckless. Petrites was not an experienced investor. The nature of his occupation made it difficult for him to supervise his business affairs closely. He did not totally ignore the information he received. He testified that he made two phone calls to Hyde regarding his accounts, and that he met with Hyde once. Although it is true that Petrites received statements regarding each sale, the jury could properly credit his testimony that he looked at these statements but did not fully understand them. Several courts have upheld churning claims where the plaintiff has exercised a similar degree of supervision. *See, e. g., Fey v. Walston & Co.*, 493 F.2d 1036, 1049–50 (7th Cir. 1974); *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1209 (9th Cir. 1970); *Kravitz v. Pressman, Frohlich & Frost, Inc.*, 447 F.Supp. 203, 211 (D.Mass.1978). Over Petrites' objection, the jury was specifically instructed regarding due diligence, and nevertheless found for Petrites. There is sufficient evidence to sustain its finding. *See Miley*, 637 F.2d at 325; *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 n.6 (5th Cir. 1978).

■ Appellants also claim that the trial court committed reversible error in restrict-

first of these counts, and it is not before us. Because of our disposition of this case, we need not and do not reach the issue of whether there is a private cause of action under exchange rules. *See Miley v. Oppenheimer & Co.*, 637 F.2d 318, 333 (5th Cir. 1981); *Vigman v. Com-*

*munity National Bank & Trust Co.*, 635 F.2d 455, 458 n.7 (5th Cir. 1981). We note that evidence admitted in support of this count would have been admissible in any event as evidence of industry standards and practices.

ing their recross-examination of Petrites. Both direct and cross-examination of Petrites had focused on his intentions as an investor. During cross-examination, appellants emphasized that Petrites had opened the first account under his mother's name. Petrites indicated that this was done partially for tax reasons. On redirect Petrites testified that he received and followed tax advice from a CPA. On recross appellants sought to bring out that when the present suit was originally filed, Petrites' mother was joined as a plaintiff. The trial judge sustained an objection on this point.

It is far from clear that the judge's ruling was incorrect. Assuming it was error, the posture of the case and the failure of the defendant to pursue the point in other ways lead us to discount its significance. "Errors in evidentiary rulings are not grounds for reversal unless substantial prejudice results." *King v. Gulf Oil Co.*, 581 F.2d 1184, 1186 (5th Cir. 1978). We find no substantial prejudice here.

■ Appellants also challenge the awards of attorneys' fees and punitive damages. This circuit has held that, absent special circumstances, attorneys' fees are not recoverable in a 10b–5 action. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 559 (5th Cir. 1981). In that same case we stated that "punitive damages are not available in a 10b–5 action . . . ." *Id.* at 559. If the latter statement was dictum, we now assert it as a holding. *Accord, Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303, 1313 (2d Cir. 1977); *Straub v. Vaisman & Co.*, 540 F.2d 591, 599 (3d Cir. 1976); *Carras v. Burns*, 516 F.2d 251, 259 (4th Cir. 1975). Such damages, however, may be recovered under pendent state claims. *See Coffee v. Permian Corp.*, 474 F.2d 1040, 1044 (5th Cir.), *cert. denied*, 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146 (1973). We therefore

proceed to consider the pendent state claims.

Appellants do not deny that the Florida Blue Sky Law [2] Fla.Stat. § 517 permits the award of attorneys' fees. *See* Fla.Stat. § 517.21. They argue, however, that the Florida Blue Sky Law does not apply to the transactions in this case.[3] Petrites met with Hyde in Atlanta, Georgia. Hyde made his purchases and sales from his Atlanta office. Appellants cite Fla.Stat. § 517.12(1) (regulating broker registration), which applies to sales "in or from offices in this state" or to sales "in this state to persons thereof from offices outside this state . . . ." They claim that this language applies equally to Fla.Stat. § 517.301 (barring securities fraud) and that the sales at issue here did not occur within Florida.

Petrites replies by pointing out that there were significant contacts with Florida. Petrites himself was a resident of Florida, a fact well known to Hyde. Hyde sent reports of each of the transactions to Florida, as well as monthly statements. Petrites received and signed the two account contracts and the options agreement in Florida. He also mailed out his checks in payment for the purchases from Florida. In addition Petrites made two telephone inquiries to Hyde regarding the status of his account from Florida. Petrites notes Op.Fla.Att'y Gen. 056–152 (May 17, 1956) which states that the Florida Blue Sky Law applies to "*the negotiating for a sale in any manner whatever*" and that it is irrelevant "whether such sale be consummated in this state or outside this state . . . ." (emphasis in original).

■ Parties cite no Florida cases directly on point, and our own research has discovered none. Cases from other jurisdictions must of course be used with caution, since both fact situations and statutory language

---

**2.** Officially known as the Florida Securities Act.

**3.** The antifraud provision of the Florida Blue Sky Law, Fla.Stat. § 517.301 was amended effective November 1, 1978. 1978 Fla.Laws c. 78–435, § 6. Insofar as this amendment affects the issue in the case at the bar, it serves to

expand the coverage of the law. The remedies provision of the Blue Sky Law, Fla.Stat. § 517.-211 (replacing Fla.Stat. § 517.21) was also changed in 1978 and again in 1979. 1979 Fla. Laws c. 79–381, § 9; 1978 Fla.Laws c. 78–435, § 5. Appellants do not argue any effect from these changes.

vary. Nevertheless, we observe that other courts have applied state Blue Sky Laws in roughly similar situations. *See, e. g., Parvin v. Davis Oil Co.,* 524 F.2d 112 (9th Cir. 1975) (California law applied when oral agreement reached in Colorado, but plaintiff mailed payment check from California); *Green v. Weis, Voisin, Cannon, Inc.,* 479 F.2d 462 (7th Cir. 1973) (Illinois law applied when plaintiff received solicitation and accepted offer to buy in Florida but defendants *inter alia* knew he was an Illinois resident and mailed his confirmation to his Illinois address); *Kreis v. Mates Investment Fund, Inc.,* 473 F.2d 1308 (8th Cir. 1973) (Missouri law applied when defendant mailed written confirmation of purchase to Missouri); *Martin v. Steubner,* 485 F.Supp. 88 (S.D.Ohio 1979) (Ohio law applied when defendants advertised in Wall Street Journal with circulation in Ohio and mailed letters to plaintiff in Ohio including contract signed by plaintiff in Ohio). *Cf. Travelers Health Association v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) (upholding state jurisdiction to apply Blue Sky Law "where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state . . . ."). In view of these cases, and "[i]n light of the great weight to be given the determination of local law by the district court in diversity cases," *Bomann Golf, Inc. v. Cosmos Industries, Inc.,* 459 F.2d 1090, 1092 (5th Cir. 1972), we affirm the holding of the district court.

Finally, appellants object to the award under the common law fraud count of punitive damages against J. C. Bradford & Company. They argue that the company was not shown to be at fault, and that punitive damages cannot be awarded simply on the vicarious liability of an employer under respondeat superior.

We are aided in our treatment of this matter by the prescience of the trial judge. In his proposed jury instructions Petrites did not distinguish between the liability for punitive damages of Hyde and of J. C. Bradford & Company. The judge on his own motion added a special interrogatory asking the jury to determine whether J. C.

Bradford & Company was separately liable for punitive damages. The jury found that it was.

Since the trial, the judge's foresight has been vindicated. In *Mercury Motors Express, Inc. v. Smith,* 393 So.2d 545 (Fla.1981) the Supreme Court of Florida held that "[b]efore an employer may be held vicariously liable for punitive damages under the doctrine of respondeat superior, there must be some fault on his part." *Id.* at 549. The employer's conduct need not be willful and wanton. All that is required is "some fault on the part of the employer which foreseeably contributed to the plaintiff's injury . . . ." *Id.* at 549. Petrites introduced evidence regarding J. C. Bradford & Company's methods of supervision over its employees. He also introduced expert testimony regarding the appropriate supervision necessitated by stock exchange rules. The difference between the two was enough to justify at least a jury finding of negligence.

Finding no reversible error in the trial court proceedings below, we affirm.

AFFIRMED.