William C. HOWARD, Plaintiff-Appellee,

v.

V. A. GONZALES, et al.,
Defendants-Appellants.

No. 80–1467
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 7, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Calvin A. Hartmann, Asst. Dist. Atty., Houston, Tex., for defendants-appellants.

Michael P. Mallia, Houston, Tex., for plaintiff-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

By this action, the plaintiff Howard sought damages for a beating and unlawful arrest. He alleged that, acting in concert, five defendants had under color of state authority deprived him of rights secured by the federal constitution. *See* 42 U.S.C. § 1983. After a five-day jury trial ending in verdict for Howard, judgment was entered in the amount of $56,050 against the five defendants cast. Only three defendants appeal; they raise six assignments of error: two concerning jury instructions, two questioning evidentiary rulings, and two questioning the sufficiency of the evidence as to two relatively minor findings of the jury on special interrogatories. Although we find that objected-to-incompetent evidence prevents recovery of $1,919.11 of the medical expenses awarded, thus entitling the defendants to a reduction of the judgment in this amount, we otherwise affirm.

*The Facts and Jury Findings*

The cast of characters in this story includes: The plaintiff *Howard*, who stopped to aid a motorist in distress; the motorist, *Mrs. Mathis*, her son Steve, and her husband John, none of whom had met Howard previously to the incident and all of whom testified strongly corroborative of his version of the incident; the defendants *Pierce* and *Taylor*, wrecker operators, who resented Howard's gratuitous services to Mrs. Mathis as unfair competition, and who did not appeal the judgment against them; and the defendants-appellants *Gonzales, Reider*, and *White*, deputy sheriffs, whom the jury found had acted in concert with their friends, Pierce and Taylor, in permitting the beating and in arresting Howard on false charges.

Construing the record evidence in favor of the jury findings, the jury could reasonably find as follows:

Mrs. Mathis had car trouble. Howard, a passerby, saw her hood raised and came up and asked if he could help her. He began working on the battery and motor of the Mathis vehicle. Pierce, a wrecker driver, drove up and had words with Howard about Howard taking money away from him. When his persistent efforts to have Mrs. Mathis retain him and to have Howard move on failed, Pierce drove away angrily; he returned shortly afterwards with Taylor, his supervisor. In the meantime, Mrs. Mathis' son Steve came up, having seen his mother's stalled car. While Howard and Steve were working on the battery, Taylor and Pierce came back on the scene. Taylor walked over to Steve and said, "Are you looking for trouble? . . . Nobody causes trouble for my workers, my friends." Pierce then told Taylor, "It isn't him, it's the other one," motioning toward Howard. Pierce and Taylor then started shoving Howard.

At this time, a deputy (the defendant Gonzales) drove up. Taylor and Pierce commented, "Well, here's our buddy", and they went over to the deputy's vehicle. Mrs. Mathis also walked over and tried to tell the deputy what had happened, but he was listening to the wrecker drivers (who were telling him that Howard was trying to cause trouble) and would not reply to her. She walked back to her own vehicle. Howard was standing by the side of the Mathis vehicle, while the son Steve was trying to start it. After the wrecker operators Taylor and Pierce talked with deputy Gonzales a little more, they walked back to the Mathis car. They then rammed Howard's head against the car and beat him with their fists and a flashlight and kept beating him for about five minutes, while they pushed him to the ground. Deputy Gonzales sat in his vehicle, watching. After some five minutes, he got out of his sheriff's vehicle and

came over and said, "That's enough", and the beating stopped.

At about this time, Reider and White, the two other deputy defendants-appellants drove up, responding to Gonzales' radio call. Mrs. Mathis attempted to explain the incident to them. However, without listening to her, they arrested and handcuffed Howard for being intoxicated. At that time, one of them kicked Howard.

By expressly finding (in response to a special interrogatory) that the arrest was unlawful, the jury obviously accepted the strong evidence that Howard, then a member of Alcoholics Anonymous for six years, was not intoxicated. He did not act, talk, or smell like he had been drinking. Witnesses who had been with him all afternoon testified positively that he had not consumed any alcoholic beverage. No breathylzer test was given him, and his request for one at the site of the accident and when he arrived at the jail was denied.

At the time he was arrested, his face was bruised and bleeding, his teeth were broken, blood was trickling from his mouth, his eyes were swelling, and his clothes were bloodied. Howard's requests at the scene for medical assistance after his arrest were ignored, and he was taken to the jail where, shortly afterwards, his release was secured and he was taken to the emergency room of a nearby hospital.

In response to a special interrogatory, the jury expressly found that "at all material times they [Taylor and Pierce, the wrecker drivers] and the deputies were acting in concert and that the wrecker drivers in this case and the deputies had a customary plan which resulted in Howard's arrest or that the wrecker drivers assisted the deputies in carrying out an unlawful arrest."[1] The three appealing defendant deputies do not complain on appeal of this finding, nor of the form of the district court judgment that

1. The evidence shows that the two wrecker operators and the three deputies were on friendly, first-name terms and had for several years worked together frequently on accidents. The record also indicates that a "regulated

price" was charged when wreckers serviced vehicles from the highway at an officer's direction; in this instance, the "regulated price" for removing a vehicle was $32.50, whereas the original tow charge would have been $15.00.

cast all five defendants for the total amount of the jury award.[2]

■ In response to other interrogatories, the jury found: that the three deputy defendants performed an unlawful arrest in bad faith (a finding not questioned on this appeal, and indeed substantial evidence supports it); that Gonzales improperly failed to protect Howard from the beating; and that the three deputies subjected Howard to cruel and unusual punishment by denying medical care through deliberate, callous, or conscious indifference to the serious medical needs of Howard.

*The Issues Raised by the Defendants-Appellants*

The three defendants (deputies Gonzales, Reider, and White) who appeal raise six issues. A threshold issue is whether two of these issues have been preserved for appeal, since these particular defendants did not make formal objection at the time. The plaintiff-appellee argues that the absence of objection by the appealing defendants precludes them from raising the issues on appeal, even though in each instance the counsel for a non-appealing defendant (Taylor) adequately raised the issues: (a) by offering the grand jury testimony of Mrs. Mathis to impeach her as to a relatively minor inconsistency between her trial testimony and her grand jury testimony; and (b) by objecting to the plaintiff Howard's hearsay testimony as to what a doctor had *told* him would be the cost ($1500) of an orthopedic brace and therapy needed as a result of traumatic ankle injuries resulting from the beating.

The threshold issue thus raised is whether under Fed.R.Evid. 103(a) error may be assigned on appeal to the admission or exclusion of evidence, when the appellant himself did not make the requisite objection or offer of proof, but a co-plaintiff or co-defendant aligned with him did so.

Rule 103(a) of the Federal Rules of Evidence provides:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

The literal wording of Rule 103(a) does not require that the objection or the offer of proof be made by the party seeking to raise the point on appeal. Unless the identity of the objector somehow affects the admissibility of the evidence, no reason appears why a party should be required to join in the objection or offer of another litigant aligned with him, in order to be able to raise the issue on appeal. 21 Wright & Graham, Federal Practice and Procedure § 5035, n. 26 (West Supp.1981). Accordingly, when one party has made an objection or offer of proof, it should be presumed, unless the contrary appears, that co-parties aligned with him have joined in the objection or offer. Without citation of Rule 103, this and other federal courts have reached the same conclusion. *See United States v. Brown,* 562 F.2d 1144, 1147 n. 1 (9th Cir. 1977); *United States v. Love,* 472 F.2d 490, 496 (5th Cir. 1973); *United States v. Bagby,* 451 F.2d 920, 927 (9th Cir. 1971); *United States v. Lefkowitz,* 284 F.2d 310, 313 n. 1 (2d Cir. 1960).[3]

---

**2.** The total amount of $56,050 resulted from jury findings on special interrogatories as to the following amounts: $17,500 for physical pain and suffering; $19,000 for mental anguish; $17,000 punitive damages; $2,500 medical expenses; and $50 wrecker expense.

**3.** In contrast to the federal courts, many state courts have held that non-objecting defendants may *not* avail themselves on appeal of codefendants objections. *See, e. g.,* cases cited in 4 C.J.S. *Appeal and Error* § 251, n.26 (1957). *But*

■ Thus when one co-party objects and thereby brings the matter to the attention of the court, further objections by other co-parties are unnecessary.

■ Accordingly, the two errors assigned by the defendants-appellants are adequately preserved for review through the offer and objection of the non-appealing defendant, which made known to the rejecting trial court the specific ground upon which ruling was sought. Since the two errors so assigned are the most arguable in the appeal, we will discuss them now.

### (a) Grand-jury testimony of Mrs. Mathis

■ Pretermitting whether these particular defendants-appellants had by earlier trial tactic waived the ground argued by their codefendant,[4] we find that the trial court erred in refusing to permit impeachment of a relatively minor portion of Mrs. Mathis' trial testimony by her inconsistent testimony as fact before the grand jury. However, we find the error harmless under the circumstances.

A witness may be impeached in any subsequent trial, civil or criminal, by contradictory testimony given by that witness to a grand jury. Fed.R.Evid. 801(d)(1); *see also* Conference Committee Report. *See, e. g., United States v. Brighton Building Maintenance Co.,* 598 F.2d 1101, 1108 (7th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 80, 62 L.Ed.2d 52 (1969); *United States v. Mosley,* 555 F.2d 191, 193 (8th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977); *National Land & Investment Co. v. Specter,* 428 F.2d 91, 97 (3d Cir. 1970); *Gollaher v. United States,* 419 F.2d 520, 523 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1979); 8 J. Wigmore, Evidence § 2363 (J. McNaughton ed. 1961). Thus, the trial court was in error in holding that grand jury testimony could not be used for impeachment purposes because it was "secret".

In this instance, the inconsistency between trial and grand jury testimony concerned the attitude of a police officer, a non-defendant, who investigated the incident a week after it had occurred. As she described the interrogation at the trial, the officer tried in two instances to suggest by leading questions a version of aspects of the incident contrary to what she had consistently reported (which was consistent with her testimony at the trial).[5] Before the

---

*see* La.Code Crim.Pro. art. 842 (as amended in 1974):

> "If an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants."

4. Earlier in the trial counsel for defendants had stated he wished to present some significant grand jury testimony. However, on the court's request for authority for admission of such testimony and offer of opportunity to produce some, counsel at this point declined to press the issue. Arguably, the present defendants-appellants thus waived the subsequent offer of proof on the part of their codefendant.

5. Mrs. Mathis in the concluding portion of her direct examination, Tr. 121–22:

Q. That's the man that came out to investigate this?
A. Yes, Sir.
Q. Okay. What was his attitude when he came to talk to you about this?
A. His attitude was that he was trying to get me to change my say-so.
Q. And how was he doing this?

A. He would ask, "Well, wasn't it this way? Didn't it happen so and so instead of what you said?"
  And if I'd say, well, it happened like I had said it did, then he'd go to a different way of speaking and then switch back to the same way he'd asked me before, thinking I would go along with what he had said.
Q. Okay. Did he try to in any way insinuate that Mr. Howard was out to harm you?
A. Yes. He said something about his—well, "Wasn't he trying to give you some trouble? Wasn't he getting fresh," or—
Q. Okay. On how many occasions did he ask you this?
A. Oh, about twice, because he would say it one time and then go on to something else, and then come back again.
Q. Okay. And what did you tell him in response to that?
A. I told him, "No, he wasn't;" that he was a gentleman at all times.
Q. Was he taking notes as to what you said, that you recall?
A. No. He wasn't, as far as I can remember. He was not taking notes.
  (Mrs. Mathis was not cross-examined as to this incident by any of the defendants. At the

grand jury, she simply replied "No" when incidentally asked by a grand juror if the investigating police officer had made "any suggestions or anything like that." [6]

Nevertheless, the inconsistency, such as it was, must be viewed in the light of Mrs. Mathis' entire trial testimony. From her first report to officers at the scene, to her report to the investigating police officer, through her grand jury testimony as a whole, her version of the beating and the unlawful arrest was entirely consistent with the 143 pages of her testimony during the five-day trial. Her proffered inconsistency as to the attitude of a non-defendant police officer, who had investigated the incident a week later, concerned a matter entirely peripheral to the factual matters at issue. Indeed, the offhand negative reply to the question of a grand juror whether the investigating officer had made "any suggestions or anything like that" (see note 6) might not be considered a significant inconsistency from the 17 lines of her testimony (see note 5) describing the interrogation in more detail.

We are convinced that the jury evaluation of Mrs. Mathis' credibility as to the beating and unlawful arrest would not have been affected had the defendants been permitted to develop the discrepancy, such as it was, relating to a peripheral non-merit issue occurring a week subsequent to the incident. In reaching this conclusion, we also take into consideration that Mrs. Mathis' version of the beating and arrest, accepted by the jury over the denials of the defendants, was corroborated by several other independent witnesses as well as the plaintiff and by other evidence, such as photographs of the victim taken the day after the beating.

Fed.R.Civ.P. 61 provides: "No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." A party asserting error has the burden of proving that "substantial rights" were affected by an erroneous evidentiary ruling. *Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088, 1093 (5th Cir. 1981). If in the reviewing court's conviction the error did not influence the jury or had but very slight effect, the error is harmless. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); 11 Wright & Miller, Federal Practice and Procedure § 2883 (1973). When no substantive prejudice results from an erroneous ruling, the error is harmless. *Petrites v. J. C. Bradford & Co.*, 646 F.2d 1033, 1036 (5th Cir. 1981); *Byrd v. United States*, 631 F.2d 1158 (5th Cir. 1981). Based on these principles, we find the insignificant denial of impeachment to be harmless error.

(b) *Hearsay testimony as to medical expenses*

The jury awarded the plaintiff Howard medical expenses in the amount of $2500. Medical bills paid were proved only to the amount of $580.89. The jury also apparently took into consideration additional medical expenses not yet incurred. Over a defendant's hearsay objection, the plaintiff Howard testified that a doctor told him that the cost of securing a brace and continued therapy for his injured ankle would be approximately $1500. The doctor was not called to testify, nor was there any other evidence

---

conclusion of the trial, counsel for a non-appealing defendant (Taylor) stated that he had been prevented by a court ruling from impeaching Mrs. Mathis' trial testimony with the inconsistent grand jury testimony, and he was permitted to make an offer of proof of the grand jury testimony he sought to use for impeachment purposes. See note 6.

**6.** The offer of proof of the impeaching testimony was as follows, Tr. 1063–64:

[By a grand juror:] May I ask one more question. Have you been contacted by any member of the sheriff's department to take a statement or anything like that?

Answer by the Witness: I think Mangogna, or I can't remember the exact name, asked me to give a statement.

Question by the Grand Juror: But he just took your statement; he didn't make any suggestions or anything like that?

Witness: No.

corroborating the cost of such medical treatment.

This hearsay testimony was incorrectly admitted as proof of dollar loss. The plaintiff-appellee does not contend otherwise, but contends the error was waived by the failure of the defendants-appellants to join in the hearsay objection of their codefendant. We have above rejected this contention.

Accordingly, the judgment for medical expenses should be reduced from $2500 to the amount proved by competent evidence, $580.89, a net reduction of $1919.11.

*Other Assignments of Error*

The remaining assignments of error do not require extended discussion:

1. *Denial of medical care :*

The defendants objected to the instruction as to the denial of medical care. It was couched in terms of Eighth Amendment cruel and unusual punishment ("deliberate, callous, or conscious indifference to serious medical needs of arrested persons, or those in custody," R. 310), whereas, defendants contend, the instance of the isolated denial of medical care for approximately one hour does not constitute a constitutional violation of that nature. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *cf. George v. Evans*, 633 F.2d 413 (5th Cir. 1980). The defendants also pointed out that this constitutional proscription does not apply to pre-trial detainees. Tr. 1067–68. On appeal, they also complained that no evidence supported the jury finding of denial of medical care as an Eighth Amendment violation.

■ In this instance, the denial of medical care for an hour or so was, however termed, an aspect of the total damages resulting from the beating and the unlawful arrest. No portion of the damages allowed by the jury was apportioned to the denial of medical care. Technically, an arbitrary and purposeless denial of medical attention to a pre-trial detainee is a due-process rather than an Eighth-Amendment violation. *Bell v. Wolfish*, 441 U.S. 520, 575

n.16, 99 S.Ct. 1861, 1872 n.16, 60 L.Ed.2d 447 (1979). In any event, however, the evidence as to the denial of medical care was admissible under the pleadings as incident to the beating and unlawful arrest by the wrecker operators and deputies acting in concert.

The jury expressly found that the arrest was unlawful and that the wrecker operators and deputies had acted in concert in accomplishing it, a finding not challenged on appeal. Though the instruction may have been erroneous as couched in terms of cruel and unusual punishment for one hour's denial of medical care, and no evidence proved that specific constitutional violation, no prejudice or reversible error is shown to have resulted.

■■ Omitting the instruction and the finding based thereupon, the jury verdict is amply supported by its other findings concerning the unlawful arrest, the beating, and the damages allowed. The reviewing court need not pass upon other grounds for recovery, if a ground upon which recovery is allowed supports the verdict and the damages allowed. *Bauman v. Centex Corp.*, 611 F.2d 1115, 1117 (5th Cir. 1980). In the absence of prejudice, a judgment should be upheld on review if the result is correct, even though it is also based upon an improper ground. *See Stegmaier v. Trammell*, 597 F.2d 1027 (5th Cir. 1979).

2. *Disallowance of impeachment with a prior felony conviction*

The defendants urge that the trial court erred in not permitting them to impeach the plaintiff Howard's credibility in this 1980 trial with a 1966 conviction for felony theft. Howard had been released from prison on this theft conviction in late 1970, about nine years before the trial.

A prior conviction may be used for impeachment of credibility only if, inter alia, (1) its probative value outweighs its prejudicial effect or (2) the crime involved "dishonesty or false statements", Fed.R. Evid. 609(a). The defendants admit that several prior decisions of this court have held that a conviction for a crime of the

present nature cannot be used for impeachment, since it does not bear upon the witness's propensity to testify truthfully—i. e., the crime does not involve "dishonesty or false statement" of the credibility-deteriorating quality contemplated by Rule 609(a)(2). *See United States v. Entrekin*, 624 F.2d 597 (5th Cir. 1980) (shoplifting), *cert. denied*, —— U.S. ——, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981); *United States v. Barnes*, 622 F.2d 107, 109–10 (5th Cir. 1980) (shoplifting); *United States v. Preston*, 608 F.2d 626, 638 n. 15 (5th Cir. 1979) (bank robbery), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980); *United States v. Cathey*, 591 F.2d 268, 276 n.16 (5th Cir. 1979); *United States v. Ashley*, 569 F.2d 975, 979 (5th Cir. 1978) (shoplifting), *cert. den.*, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978).

■ The defendants ask us to reject the rationale of these cases. However, even if we were inclined to disagree with them, in this circuit one panel cannot overrule another; absent *en banc* reconsideration, we follow the prior circuit decisions. *Dahl v. Akin*, 630 F.2d 277, 282 n.4 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981); *Williams v. Blazer Financial Services, Inc.*, 598 F.2d 1371, 1374 (5th Cir. 1979).

■ Nor do we find any abuse of the trial court's broad discretion under Rule 609(a)(1) in the determination of whether to allow or disallow use of a conviction based upon whether its probative value exceeds its prejudicial effect. *See Shingleton v. Armor Velvet Corp.*, 621 F.2d 180, 183 (5th Cir. 1980).

3. *Erroneous instruction as to Deputy Gonzales' duty to protect the plaintiff Howard*

■ The defendants' arguments in this regard are chiefly based upon their construction of the facts to show that Gonzales drove up and was at most negligent in failing to stop the beating that was well under way. As previously noted, the jury

had before it evidence that it reasonably found credible that Gonzales was more than an onlooker; that the wrecker operators beat up Howard after consulting with him, while he sat in his vehicle watching the while. For this reason, among others, we find that this assignment of error possesses little merit.

*Conclusion*

For the reasons assigned, the judgment is AMENDED so as to reduce the award by $1919.11 (the inadequately proven medical expenses); as amended, it is otherwise AFFIRMED in all other respects.

AMENDED AND AFFIRMED.