896 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DESGUACES VIGE, S.A., Plaintiff-Appellee,
v.
MIDWEST PRODUCTS & ENGINEERING, INC.; Defendant.
PAI'S MARINE CORPORATION, Defendant-Appellant,
v.
AMERICAN NATIONAL BANK OF KNOXVILLE, TENNESSEE; Chesapeake
& Ohio Railway, Intervenors.
 No. 89-3177.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1990.
 
 Before BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges and JOHN W. PECK, Senior Circuit Judge.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Pai's Marine Corporation appeals the arbitration result, stemming from a dispute over a contract for the purchase of two ships.
 
 
 2
 Midwest Products and Engineering, Inc. contracted on August 8, 1985 to sell Desguaces Vige, S.A. two vessels, the S.S. Champlain and the S.S. Cadillac. These vessels were obsolete great lakes bulk carriers laid up in the Port of Toledo, Ohio; Vige sought to purchase them for scrap. The contracts provided that Midwest Products would deliver the vessels to the Port of San Esteban de Pravia, Spain. At delivery, Vige would pay the purchase price of $370,000, secured by irrevocable letters of credit. The contracts further provided that the vessels would pass Three Rivers, Quebec under tow for Spain not later than September 10, 1985.
 
 
 3
 Midwest Products only recently had agreed to purchase the vessels from the Cleveland-Cliffs Steamship Company. Midwest Products paid $10,000 down and the rest was to be paid on closing. This sale had not yet closed when Midwest Products contracted to resell the vessels to Vige.
 
 
 4
 Midwest Products had no assets and was owned and controlled by John P. White. In order to pay the purchase price to Cleveland-Cliffs, John White advance $5,000 from his personal checking account, he caused Midwest Steel Fabricators, Inc., another corporation he owned and controlled, to advance $60,000 from its corporate funds and to borrow the remaining $200,000 from the First American National Bank of Knoxville, Tennessee. Midwest Products was directly liable on the bank loan.
 
 
 5
 Midwest Products never took title of the vessels; its sister corporation Pai's Marine took title instead. On August 14, 1985, John White caused Pai's Marine Corp. to be created in Florida. Thus, John White created Pai's Marine was created after he had entered the contract with Vige, but before he had closed the deal with Cleveland Cliffs. John White was president of both Pai's Marine and Midwest Products.
 
 
 6
 Apparently, John White wished to arrange an escape from his contract with Vige, in order to pursue a more lucrative opportunity to sell the vessels to China. John White had the Cleveland-Cliffs draw up the bills of sale for the vessels in the name of Pai's Marine, instead of Midwest Products. Pai's Marine had no written contract with Midwest Products regarding the vessels. Pai's Marine did not assume any obligation to perform Midwest Products's agreement with Vige, not to reimburse John White or Midwest Steel for their payments on the vessels. Pai's Marine did guarantee the loan from the bank. Pai's Marine closed the purchase of the vessels and a bill of sale was executed in its name on August 30, 1985.
 
 
 7
 The vessels were never delivered to Vige. Vige filed a lawsuit in Ohio state court against Pai's Marine and Midwest Products on August 9, 1985, although the contract between Vige and Midwest Products called for arbitration of disputes in New York. Although Vige sought damages of $165,000, Vige also sought and obtained attachment of the two vessels, still at the Port of Toledo. No bond was furnished because the defendants were foreign corporations. Ohio Rev.Code Sec. 2715.04. Pai's Marine removed this case to federal district court because of diversity.
 
 
 8
 After Vige gained attachment of the vessels, it filed an action in the Southern District of New York to compel arbitration on January 7, 1986. The dispute proceeded to arbitration in New York, where a three member arbitration panel made a final award in favor of Vige against only Midwest Products of 182,181.52 plus interest on January 7, 1987, representing Vige's loss of profits.
 
 
 9
 On January 13, 1987, Vige filed a motion in the U.S. District Court in the Northern District of Ohio to confirm the arbitration award and to enter judgment. The bank objected, arguing that the request for judgment should be made in New York because the arbitration was order in New York and took place in New York. The district court confirmed the arbitration award in an order on April 24, 1987.
 
 
 10
 On January 12, 1987, the district court granted summary judgment in favor of Vige. The district court found that John White, as President of both Midwest Products and Pai's Marine, had actual knowledge of Vige's interest in the vessels because he signed the contracts between Midwest Products and Vige. The district court imposed a constructive trust in favor of Vige to protect Vige's equitable interest in the ships.
 
 
 11
 Pai's Marine raises four issues on appeal.[1] First, Pai's Marine argues that the district court in Ohio lacked jurisdiction to confirm the arbitration award. Pai's Marine argues that this action must be brought in New York under 9 U.S.C. Sec. 9, because the action to compel arbitration was brought in New York and the contract stipulated that arbitration must take place in New York. Second, Pai's Marine argues that the district court improperly allowed Pai's Marine to be injected into the case when that issue could have been determined at arbitration.
 
 
 12
 Pai's Marine has waived both of these arguments on appeal by failing to raise them below.[2] This waiver applies even though the bank raised these two issues at the district court. The purpose of waiver is to allow the district court to decide the measure at once, to avoid the need for a new trial, and to give the appellate court a decision to review. Pai's Marine argues that because the bank filed motions opposing these actions, the district court made a decision and any other party should be able to challenge that decision on appeal. Pai's Marine relies on Howard v. Gonzales, 658 F.2d 352, 355 (5th Cir.1981), in which the Court held that a party may challenge an evidentially ruling made by the district court, even if the objection was made not by that party, but by a co-party.
 
 
 13
 We agree with the Howard reasoning, but it does not apply in this case. Howard held that an evidentiary ruling may be challenged by any co-party on appeal, even if not by the party who made the challenge. This rule clearly applies to evidentially objections which are a matter of blind rules. When one party at counsel's table stands up to object, the counsel for the co-parties need not stand up and parrot the statements of the first in order to preserve their record for appeal. However, the questions we review on appeal today involve motions on questions of law. Instead of having to act quickly in the courtroom, Pai's Marine had time to decide whether to join the bank in its objections. If Pai's Marine made a strategy decision not to join the bank in these objections, it cannot later undo its decision and relitigate the question on appeal.
 
 
 14
 Pai's Marine also waived its third argument, which challenged the constitutionality of the state statute under which the vessels were attached. No party raised this issue at the lower court. In exceptional situations, appellate courts will hear constitutional arguments in the first instance in exceptional situations. But the question of whether an opponent may furnish security for his submission is such a fundamental constitutional right that it can meet the exception.
 
 
 15
 Fourth, Pai's Marine argues that the district court erred in establishing a constructive trust of the vessels to satisfy claims against Midwest products. Pai's Marine argues that because it had title to the vessels and it is a separate corporation from Midwest Products, it cannot lose the vessels, its property, because it legally acquired them. We disagree; the district court properly created a constructive trust under The Restatement of Restitution Sec. 168(1) (1937). Section 168(1) states:
 
 
 16
 Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser.
 
 
 17
 The solution to the current problem is two successive applications of section 168. First, Cleveland-Cliffs transferred the vessels, in which Midwest Products had a beneficial interest, to Pai's Marine. In turn, Vige had a beneficial interest in Midwest Products's interest in the vessels. Because John White was President of both Midwest Products and Pai's Marine, Pai's Marine knew both of the interest of Midwest Products and the interest of Vige. Under section 168(1), the transferee, Pai's Marine, held the vessels subject to the interest of Midwest Products, which was subject to the interest of Vige.
 
 
 18
 Ohio law allows for a court to impose a constructive trust when equity requires it to uphold the "general legal obligation of honesty and fair dealing." Fehrman v. Ellison, 32 Ohio App.2d 258, 261, 290 N.E.2d 190, 192 (1971). What we have here is a case of double-dealing. In a typical transaction, a person would arrange to sell two ships to Vige, and buy the two ships for the sale from Cleveland-Cliffs, earning an honest profit as the intermediary. John White sought to break his contract with Vige, leaving an empty shell corporation so Vige could not collect any damages. John White transferred the only asset of Midwest Products, its contractual interest in the vessels, to Pai's Marine. Both Pai's Marine and Midwest Products were shell corporations, without any substantial assets. If Vige cannot gain possession of the ships for judicial sale in order to satisfy its damages award, it cannot gain anything. Such a result would allow John White to successfully play his corporate shell game and elude the requirements of the contract with Vige. Equity requires that a constructive trust be used to avoid this result.
 
 
 19
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Pai's Marine initially argued also that attachment could only be accomplished by pursuing a garnishment proceeding because the vessels were in the name of a company other than Midwest Products. Pai's Marine withdrew that argument in its reply brief
 
 
 [2]
 Pai's Marine contends that the Northern District of Ohio lacked "jurisdiction" to confirm the arbitration award, and subject matter jurisdiction, of course, cannot be waived. However, "jurisdiction" here does not mean either subject matter jurisdiction, which the parties have by diversity, or in personem jurisdiction, to which both parties clearly have submitted. "Jurisdiction" here means which federal court can confirm an arbitration award under the Arbitration Act. 9 U.S.C. Sec. 3. Indeed, section 3 does not even use the word, "jurisdiction." Thus, a party can waive jurisdiction in this sense