**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danny SELLERS and Terry Roach,
Defendants–Appellants.**

No. 89–8513.

United States Court of Appeals,
Eleventh Circuit.

July 19, 1990.

---

**600**

John T. Strauss, Strauss & Walker, Covington, Ga., and Edward Tolley, Cook, Noell, Tolley & Aldridge, Athens, Ga., for defendants-appellants.

Samuel A. Wilson, Jr., U.S. Atty., Macon, Ga., Suzanne Drouet, Daniel L. Bell, II, Tom Chandler, and Dennis J. Dimsey, U.S. Dept. of Justice, Civ. Rights Section, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, Senior District Judge.

JOHNSON, Circuit Judge:

Defendants Terry Roach and Danny Sellers appeal their convictions on one count each of depriving an individual of constitutional rights under color of law under 18 U.S.C.A. §§ 2 and 242. Defendant Roach also appeals his sentence.

## I. STATEMENT OF THE CASE

In 1987, Roach and Sellers were investigators with the Oconee County Sheriff's Department in Watkinsville, Georgia. On November 6, 1987, Edward Farmer, a businessman in nearby Eastville, reported a burglary and theft of $10,000 from his business. Roach, a longtime acquaintance of Farmer, was assigned to investigate. On the afternoon of November 16, 1987, Farmer called Roach and informed him that he had a suspect in the theft. Roach drove out to Farmer's place of business. That same afternoon, Kenneth Wayne Hill, an employee of Farmer, had driven to Farmer's place of business after dropping off his wife and children at a friend's house. Hill was the individual Farmer suspected. Hill's electricity had been shut off, and he went to Farmer hoping to borrow some money to pay the bill. After Hill arrived at Farmer's business and began moving some equipment, Farmer went inside to tele-

phone Roach, and a little while later Roach arrived and went inside to talk with Farmer. When they came out, Roach asked Hill to come with him down to the Sheriff's Office to talk about the theft. Hill agreed and they drove to the Office in Roach's car. At the Office, Hill was left alone for a few minutes in a booking room, and was not allowed to use the phone. Roach then took Hill to a small interrogation room with a desk and chairs but no window or telephone.

According to Hill's testimony at trial, Sellers joined Roach and they began questioning him about the theft. Hill denied any knowledge of it. Roach and then Sellers left the room, and returned with Farmer. Roach and Sellers resumed questioning Hill while Farmer struck him repeatedly on the head, sometimes knocking his head against the wall. Hill repeatedly asked Roach and Sellers to stop Farmer, but they did nothing. At one point, according to Hill, Farmer threatened to kill him. After Farmer hit Hill in the eye, Roach and Sellers finally stopped him, and Sellers took Farmer out of the room. Roach warned Hill that Farmer might kill him if he didn't talk. Hill responded that he wanted to have Farmer arrested, but Roach told him to "keep [his] damn mouth shut," and that he and Farmer would have to settle matters for themselves.

Roach drove Hill back to Farmer's place of business so Hill could get his car. Hill couldn't find his keys when they got there, so Roach agreed to drive him back to the friend's house where Hill's wife and children were staying. Along the way, they stopped at a photo store where Roach had some film developed which related to another case he was working on. Roach finally dropped Hill off at the friend's house around 6:30 in the evening. Witnesses testified that Hill was unharmed before meeting with Roach, Sellers, and Farmer that day, but that after returning with Roach, Hill's left ear was injured, his right eye was swollen and bruised, and he had

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

"knots" on his head. A doctor who treated Hill late that night at an emergency room testified that he had a ruptured left eardrum and bruising under his right eye, consistent with being beaten about the head. An FBI agent who interviewed Hill regarding the incident the next day observed signs of injury consistent with the foregoing.

On December 9, 1988, Roach, Sellers, and Farmer were each indicted for conspiracy to violate Hill's rights while in custody under 18 U.S.C.A. § 241 ("the conspiracy count") and violating or aiding and abetting the violation of Hill's rights under 18 U.S.C.A. §§ 2 and 242 ("the substantive count"). In the meantime, Roach had been elected sheriff of Oconee County, taking office on January 1, 1989. On March 3, 1989, Farmer was granted a severance, and jury trial began for Roach and Sellers on March 6, 1989. On March 9, 1989, the jury acquitted both defendants on the conspiracy count, but convicted both on the substantive count. On June 19, 1989, the district court sentenced Roach and Sellers each to 12 months imprisonment.[1] The district court and this Court denied the defendants' motions for bond pending appeal, and they began serving their sentences on July 17, 1989. The defendants appeal to this Court, raising the issues discussed below.[2]

## II. ANALYSIS

### A. *Evidentiary Issues*

The district court's evidentiary rulings are not subject to disturbance on appeal absent a clear abuse of discretion. *See United States v. Kelly*, 888 F.2d 732, 743 (11th Cir.1989). The district court's discretion to exclude concededly relevant evidence under Fed.R.Evid. 403 is limited,

however; otherwise relevant evidence may be excluded under Rule 403 "only when 'its probative value is substantially outweighed by the danger of unfair prejudice.'" *United States v. Finestone*, 816 F.2d 583, 585 (11th Cir.), *cert. denied*, 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987). Even where an abuse of discretion is shown, nonconstitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected. *See United States v. Stout*, 667 F.2d 1347, 1352 (11th Cir.1982); *United States v. Nill*, 518 F.2d 793, 802 (5th Cir.1975); Fed.R.Evid. 103(a). As discussed below, we find that the district court acted well within its discretion on all the challenged evidentiary issues.

### 1. Impeachment of Hill

■ Roach and Sellers both argue that the district court improperly prevented them from impeaching Hill's credibility in several respects.[3]

#### (i) Hill's Hospital Admission

■ In October 1986, Hill voluntarily admitted himself to the psychiatric wing of a hospital, informing the hospital staff that he had an acute problem with drug and alcohol abuse. Hill testified *in camera*, however, that he had made up the drug addiction story, and had in fact checked into the hospital because his wife had just left him, he "was kind of crazy and didn't know what to do," and thought "maybe [he] would get some sympathy." Blood and urinalysis tests taken by the hospital turned up negative for illegal drugs. Hill had used cocaine and marijuana in the past, however, by his own admission and, apparently, according to other evidence. Hill

---

**1.** The court also imposed on each defendant an additional 12 months of supervised release and required the defendants jointly to make restitution to Hill of $778.

**2.** Some of the issues, as indicated, are raised by only one or the other defendant.

**3.** The defendants also argue, based on the totality of the district court's evidentiary rulings limiting their cross-examination of Hill, that their

Sixth Amendment confrontation rights were violated. Given the extensive cross-examination actually conducted by the defense, however, and the meritless character of their evidentiary challenges as discussed in the text, they fall far short of such a showing. *See United States v. Calle*, 822 F.2d 1016, 1020 (11th Cir.1987) (cross-examination adequate under Sixth Amendment so long as the defense is permitted to elicit sufficient information from which the jury can gauge credibility, motive, and bias).

left the hospital without checking out later on the same night he was admitted.

The defendants make a threefold argument against the district court's exclusion of this evidence. First, the defendants contend that it constituted "psychiatric" evidence bearing on Hill's mental capacity. Nothing in the defendants' proffer, however, suggested that Hill had ever suffered from any mental illness as such, aside from drug or alcohol abuse, and the proffered evidence certainly did not suggest that he suffered any mental disorder at the time of the November 1987 interrogation which might have impaired his ability to perceive events. *Cf. United States v. Partin*, 493 F.2d 750, 762 (5th Cir.1974) (evidence admissible concerning "witness's mental incapacity at a time about which he proposes to testify"); *accord United States v. Lindstrom*, 698 F.2d 1154, 1163 (11th Cir.1983) (admissibility of "a history of psychiatric disorders ... *having specific relevance to the facts at issue*") (emphasis added).

■ Second, the defendants contend that Hill's prior drug use was admissible impeachment evidence. Hill denied, however, and the defense could proffer no evidence, that he had used illegal drugs during the year prior to November 1987. There was certainly no evidence that he was under the influence of drugs or alcohol at the time of the interrogation. Because of the extreme potential for unfair prejudice flowing from evidence of drug use, this Court has held that such evidence may properly be limited to "specific instances of drug use [during] relevant periods of trial and the transaction charged in the indictment." *United States v. Holman*, 680 F.2d 1340, 1353 (11th Cir. 1982); *accord Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir.1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial."). Furthermore, prior instances of drug use are not relevant to truthfulness for purposes of Fed.R.Evid. 608(b). *See United*

*States v. Rubin*, 733 F.2d 837, 841–42 (11th Cir.1984).

Third, the defendants contend that they were entitled to cross-examine Hill under Rule 608(b) concerning his admission that he lied to the hospital staff. This isolated untruth, however, which was apparently motivated by extreme emotional distress, would seem to have little if any conceivable relevance to his credibility at trial. *See United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980) ("[T]he district court is not bound to allow examination into every incident, no matter how remote in time and circumstance, that may possibly bear upon the witness' veracity."). We note that Rule 608(b) provides that specific instances of prior conduct "*may ... in the discretion of the court*, if probative of truthfulness or untruthfulness, be inquired into on cross-examination." (Emphasis added.)

For these reasons, there was no abuse of discretion as to this item.

### (ii) Hill's Comments to Roach on the Ride Back

■ The defense made a rather murky proffer of evidence regarding comments which Roach claimed Hill made to him during the ride back from the interrogation. According to Roach, Hill expressed fear of an associate to whom he owed money regarding past drug use, and also expressed fear of his father-in-law and wife. Hill allegedly indicated that he was afraid the associate or his father-in-law might find out he had been down at the Sheriff's Office, and might suspect that he had talked to the police. The defense had earlier suggested, but could not proffer any significant evidence, that Hill and Hill's father-in-law were jointly involved in the theft from Farmer's business.[4] The claimed relevance of this proffered evidence to whether Hill had a motive to fabricate his account of the interrogation, or whether someone other than Farmer beat him, appears to rest on an exceedingly tenuous chain of speculation. We have no difficulty concluding that

---

**4.** Hill was never charged with that crime, and so far as the record before this Court reveals, it remains unsolved.

any conceivable relevance was vastly outweighed by the potential for unfair prejudice, *see* Fed.R.Evid. 403, and that the district court therefore had discretion to exclude this evidence. Any error was plainly harmless in any event.[5]

### (iii) Hill's Prior Theft Conviction

The defendants contend that evidence of a prior conviction of Hill for misdemeanor theft should have been admitted for impeachment purposes under Fed.R. Evid. 609(a)(2). It is established in this Circuit, however, that crimes such as theft, robbery, or shoplifting do not involve "dishonesty or false statement" within the meaning of Rule 609(a)(2). *See United States v. Entrekin*, 624 F.2d 597, 598–99 (5th Cir.1980), *cert. denied*, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981) (shoplifting);[6] *United States v. Preston*, 608 F.2d 626, 638 n. 15 (5th Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980) (bank robbery); *see also Howard v. Gonzales*, 658 F.2d 352, 358–59 (5th Cir. Unit A 1981) (theft).[7] *But see United States v. Brown*, 603 F.2d 1022, 1029 (1st Cir.1979) (holding that burglary and petit larceny have bearing on credibility). The district court therefore acted properly within its discretion in excluding this evidence.

### (iv) Hill's Pending Theft Charge

Finally, the defendants challenge the district court's exclusion of evidence of a prior unrelated theft committed by Hill, on which charges were pending at the time of the interrogation.[8] While the defendants argue the admissibility of this evidence as prior conduct bearing on truthfulness under Fed.R.Evid. 608(b), theft, as discussed in Part II(A)(1)(iii) above, has no such bearing. The defendants' alternative theory is that this pending charge gave Hill a motive to fabricate his account of the interrogation. As with the proffered evidence discussed in Part II(A)(1)(ii) above, this theory seems hopelessly speculative and vastly outweighed by the potential for unfair prejudice. The principal cases cited by the defendants are inapposite in that they involved promises of leniency or immunity as to pending charges against a witness in return for testimony. *See, e.g., Jenkins v. Wainwright*, 763 F.2d 1390, 1392 (11th Cir.1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2290, 90 L.Ed.2d 730 (1986); *United States v. Garrett*, 727 F.2d 1003, 1011 (11th Cir.1984), *aff'd*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).[9]

---

5. The defense attempted in several respects to construct a theory that someone other than Farmer caused Hill's injuries. Unless numerous witnesses aside from Hill were simply lying, however, a conclusion obviously rejected by the jury, it appears to have been physically impossible for the injuries to have occurred other than during the time Hill was in the custody of Roach and/or Sellers.

6. Decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent on the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

7. Because *Howard* was decided by Unit A of the former Fifth Circuit subsequent to the October 1, 1981 circuit split, it is not binding precedent on the Eleventh Circuit. *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982). It is consistent with the binding precedents of *Entrekin* and *Preston* noted above, however, and we find it persuasive on this issue.

8. These charges were apparently later dropped and Hill was never convicted.

9. The defense also sought to impeach Hill with an allegedly perjurious statement made to the grand jury in this case, relating to the pending theft charge discussed above. Apparently, Hill told the grand jury that he was arrested and jailed pending trial on this theft charge some time after the interrogation. In fact, according to the defense's proffer, Hill was arrested and jailed at that time on a bench warrant after failing to appear in court, after having been arrested and charged with the unrelated theft prior to the interrogation. It is utterly unclear from the proffer whether this alleged discrepancy constituted anything more than a trivial and unintentional misstatement by Hill as to *why* he was jailed at a particular time. Hill, as the evidence in this case established, is illiterate and never went past the seventh grade in school; any confusion on his part about the precise legal basis for his incarceration would seem entirely understandable. The district court's conclusion that this proffered evidence was utterly irrelevant appears well within its discretion. Any conceivable relevance would certainly have been outweighed by the potential for unfair prejudice.

As to all the foregoing impeachment issues, the defense appears to have followed a strategy of putting Hill on trial in place of Roach and Sellers. For the reasons discussed above, the district court properly kept this trial focused on the relevant issues.

### 2. Evidence of Farmer's Violent Tendencies

■■■■ Sellers contends that the district court improperly permitted the Government to introduce evidence of Farmer's general reputation in the community for being hot-tempered and violent. Sellers also objects to evidence of a specific past incident of violent behavior by Farmer, of which Roach was informed the day after it happened, and evidence that Roach was made aware on two other specific occasions of Farmer's proclivity for violence. Federal Rule of Evidence 404, of course, bars the admission of general character evidence and evidence of specific acts for the purpose of proving "action in conformity therewith." The disputed evidence in this case clearly had some potential for unfair prejudice under Rule 404, in that it suggested that Farmer's beating of Hill would have been in character, thus supporting Hill's account of the interrogation. Because Roach and Sellers conceded that they permitted Farmer to talk with Hill in their custody, evidence that Farmer in fact beat Hill tends to support their guilt by a route improper under Rule 404.[10] The Government proffered the evidence, however, as relevant to intent and knowledge on the defendants' part. The evidence supported the Government's theory that the defendants, especially Roach, knew about Farmer's violent proclivities in advance and deliberately planned and intended to use him to beat a confession out of Hill. We note that this evidence was especially crucial as to the conspiracy count on which the defendants were ultimately acquitted.

This Court has outlined the proper analysis for admitting extrinsic-act evidence under Federal Rules of Evidence 404(b) and 403:

> The court must first determine whether the [evidence] is relevant to an issue other than ... character. If such relevancy is established, it must then determine whether the probative value of the evidence is substantially outweighed by the prejudice arising from it, and whether the proffered evidence is otherwise admissible under rule 403.

*United States v. Butler,* 792 F.2d 1528, 1535 (11th Cir.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). The evidence of Farmer's violent tendencies in this case satisfies this standard.[11] The district court had discretion to conclude that its probative value, as discussed above, was

---

**10.** *But see* note 11, *infra* (discussing issue of Rule 404's applicability to acts of non-defendants).

**11.** Although *Butler* focused specifically on extrinsic-act evidence under Rule 404(b), we find its reasoning applicable to the evidence of Farmer's general character under Rule 404(a). Even general character evidence can be "relevant to an issue other than ... character" where, as here, it is probative of knowledge and intent on the part of the defendant.

Furthermore, we note that this Court has held that "Rule 404(b) does not specifically apply to exclude ... evidence ... involv[ing] an extraneous offense committed by someone other than the defendant." *United States v. Morano,* 697 F.2d 923, 926 (11th Cir.1983). We question *Morano*'s reasoning, although of course we are bound by it as precedent. *See United States v. Machado,* 804 F.2d 1537, 1543 (11th Cir.1986). The plain language of Rule 404(b) refers to "persons," not "defendants," and Rule 404(a) carves out specific exceptions relating to the "accused," "victim[s]," and "witness[es]." Where, as in *Morano* and this case, the non-defendant's "extraneous" act, if proved, directly supports the guilt of the defendant as to the crime charged, that "extraneous" act should not, it seems, be subject to proof through the improper character-evidence route condemned by Rule 404. Indeed, it is difficult to see how the non-defendant's act could be described as "extraneous" in such circumstances.

This issue need not concern us, however, because *Morano* held that the factors articulated in Rule 404 "should be considered in weighing the balance between the relevancy of this evidence and its prejudice under Rule 403." *Morano,* 697 F.2d at 926. The functional analysis is thus largely the same. Whether analyzed under *Butler* or Rule 403 alone, the district court in this case acted well within its discretion as to this issue.

not substantially outweighed by its unfair prejudicial impact.

■ Sellers makes a related argument on this issue that the district court erred by not giving the jury a limiting instruction that this evidence should be considered only against Roach.[12] There was sufficient evidence, however, relating to Sellers's knowledge of the community as a law enforcement officer and his close working relationship with Roach, from which the jury could properly conclude that Sellers was aware of Farmer's proclivity for violence. While much of this evidence implicated Roach most directly, the district court properly instructed the jury to consider the case against each defendant on each count separately.

■ Sellers also moved for severance because of the admission of this evidence. The district court's denial of this motion was well within its discretion. *See United States v. Zielie,* 734 F.2d 1447, 1464 (11th Cir.1984), *cert. denied,* 469 U.S. 1189, 1216, 105 S.Ct. 957, 1192, 83 L.Ed.2d 964, 84 L.Ed.2d 338 (1985) ("Severance will be granted only if a defendant can demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense. . . . A defendant does not suffer compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants."); *United States v. Harrell,* 737 F.2d 971, 976 (11th Cir. 1984), *cert. denied,* 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985) ("disparity in the quantum of proof . . . justifies severance only in the most extreme cases").

3. Impeachment of Sellers

■ Sellers challenges the district court's ruling permitting the Government to impeach him on cross-examination with the fact that he had left or been fired from a job as a security officer with the Georgia Power Company because he had claimed expenses to which he admitted he was not entitled. This incident was plainly probative of Sellers's truthfulness under Fed.R. Evid. 608(b). Sellers argues that because it occurred eight years before trial, its relevance was outweighed by unfair prejudicial impact. He also contends that it was unfair for the district court to admit this evidence while excluding the evidence of Hill's dissembling to the hospital staff. *See* Part II(A)(1)(i) above. We find the two situations quite distinct, however, especially given the vastly greater potential for unfair prejudice in Hill's case.[13] We are therefore unable to find any abuse of discretion by the district court on this issue.

B. *Roach's Sentencing Challenge*

■ Roach contends that the district court erred by not decreasing his offense level on the ground that his participation in the crime was "minor" or "minimal." *See* Sentencing Guidelines § 3B1.2. Our standard of review on this factual issue is whether the district court's decision was "clearly erroneous." *United States v. Erves,* 880 F.2d 376, 381 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989). We find it odd that only Roach rather than Sellers raises this issue on appeal. The evidence plainly indicates that Roach had more comprehensive involvement in the crime than Sellers.[14] Roach's comparison of his culpability with

---

12. We note that, the district court having refused to give this requested instruction, neither defendant requested that the court instruct the jury precisely for what purposes it could consider the evidence of Farmer's violent tendencies, nor do they raise any such issue on appeal. Any claim in this regard, however, would not have been grounds for reversal on the facts of this case in any event.

13. It seems unlikely that the evidence as to Sellers had any *unfair* prejudicial impact, because the average person would not logically conclude that someone who falsifies expense

accounts has any particular proclivity to aid and abet a physical assault. To the extent that the evidence depicted Sellers as a liar, that was precisely its intended and appropriate impact under Rule 608(b).

14. We do not suggest that Sellers should have received a reduction under § 3B1.2. Sellers does not appeal the district court's denial of his motion for such a reduction, but we have no doubt that we would have affirmed that denial in any event.

Farmer's misconstrues the nature of the crime of which he was convicted. Although it was Farmer who administered the fisticuffs, it was Roach who betrayed his public trust by using his official powers *"under color of ... law"* to create the situation which made Farmer's assault possible. The fact that Farmer did not assault Hill when the two were alone at Farmer's place of business indicates that Farmer was emboldened to do so only after Hill was held helpless in official custody by Roach and Sellers. The indictment charged Roach and Sellers, not merely with willfully aiding and abetting Farmer's "assault [on Hill] for the purpose of obtaining a confession," but with willfully and directly violating Hill's right "to be kept free from harm while in official custody." The district court's refusal to grant the requested reduction was not only *not* clearly erroneous, a contrary decision *would* have been clearly erroneous.

### III. CONCLUSION

We AFFIRM the convictions and sentences of both defendants.