**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward FARMER, Defendant–Appellant.**

**No. 89–8868.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1991.

Donald F. Samuel, The Garland Firm, P.C., Atlanta, Ga., for defendant-appellant.

Edgar W. Ennis, Jr., U.S. Atty., Macon, Ga., Thomas E. Chandler, Dennis J. Dimsey, U.S. Dept. of Justice, Civil Rights Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

Before ANDERSON and
EDMONDSON, Circuit Judges, and
MORGAN, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Edward Farmer appeals his conviction for depriving an individual of constitutional rights under color of law in violation of 18 U.S.C. §§ 2 and 242. Appellant also appeals from the district court's sentencing determination.

## I. FACTS

The facts of this case were well stated in a prior opinion of this court in a related case, *United States v. Sellers*, 906 F.2d 597 (11th Cir.1990). Accordingly, we adopt the following statement of facts from that opinion:

> In 1987, Roach and Sellers were investigators with the Oconee County Sheriff's Department in Watkinsville, Georgia. On November 6, 1987, Edward Farmer, a businessman in nearby Eastville, reported a burglary and theft of $10,000 from his business. Roach, a longtime acquaintance of Farmer, was assigned to investigate. On the afternoon of November 16, 1987, Farmer called Roach and informed him that he had a suspect in the theft. Roach drove out to Farmer's place of business. That same afternoon, Kenneth Wayne Hill, an employee of Farmer, had driven to Farmer's place of business after dropping off his wife and children at a friend's house. Hill was the individual Farmer suspected. Hill's electricity had been shut off, and he went to Farmer hoping to borrow some money to pay the bill. After Hill arrived at Farmer's business and began moving some equipment, Farmer went inside to telephone Roach, and a little while later Roach arrived and went inside to talk with Farmer. When they came out, Roach asked Hill to come with him down to the Sheriff's Office to talk about the theft. Hill agreed and they drove to the Office in Roach's car. At the Office, Hill was left alone for a few minutes in a booking room, and was not allowed to use the phone. Roach then took Hill to a small interrogation room with a desk and chairs but no window or telephone.

> According to Hill's testimony at trial, Sellers joined Roach and they began questioning him about the theft. Hill denied any knowledge of it. Roach and then Sellers left the room, and returned with Farmer. Roach and Sellers resumed questioning Hill while Farmer struck him repeatedly on the head, sometimes knocking his head against the wall. Hill repeatedly asked Roach and Sellers to stop Farmer, but they did nothing. At one point, according to Hill, Farmer threatened to kill him. After Farmer hit Hill in the eye, Roach and Sellers finally stopped him, and Sellers took Farmer out of the room. Roach warned Hill that Farmer might kill him if he didn't talk. Hill responded that he wanted to have Farmer arrested, but Roach told him to "keep [his] damn mouth shut," and that he and Farmer would have to settle matters for themselves.

> Roach drove Hill back to Farmer's place of business so Hill could get his car. Hill couldn't find his keys when they got there, so Roach agreed to drive him back to the friend's house where Hill's wife and children were staying. Along the way, they stopped at a photo store where Roach had some film developed which related to another case he was working on. Roach finally dropped Hill off at the friend's house around 6:30 in the evening. Witnesses testified that Hill was unharmed before meeting with Roach, Sellers, and Farmer that day, but that after returning with Roach, Hill's left ear was injured, his right eye was swollen and bruised, and he had "knots" on his head. A doctor who treated Hill late that night at an emergency room testified that he had a ruptured left eardrum and bruising under his right eye, consistent with being beaten about the head. An FBI agent who interviewed Hill regarding the incident the next day observed signs of injury consistent with the foregoing.

## II. PROCEDURAL HISTORY

On December 9, 1988, the United States filed an indictment charging appellant Farmer, along with Roach and Sellers, with

conspiracy to willfully deprive Hill of his civil rights, 18 U.S.C. § 241,[1] (the "conspiracy count"), and with aiding and abetting the willful deprivation of Hill's civil rights under color of state law, 18 U.S.C. §§ 2 and 242[2] (the "substantive count"). The district court ordered Farmer to be tried separately from Roach and Sellers.[3] Before trial, the district court granted Farmer's motion to move the trial from Athens to Macon, Georgia. After a two-day trial beginning on March 27, 1989, the jury acquitted Farmer on the conspiracy count, but the substantive count resulted in a mistrial after the jury was unable to reach a verdict.

Aware that the government intended to retry him on the substantive count, Farmer filed a motion to dismiss the indictment on double jeopardy grounds, including the doctrine of collateral estoppel.[4] The district court denied the motion to dismiss on July 7, 1989. On July 11, 1989, Farmer filed a notice of appeal from the district court's order denying the motion to dismiss,[5] and simultaneously filed a motion in the district court seeking to stay the impendent trial pending the appeal. The district court denied the motion for stay, reasoning that it had jurisdiction to proceed with the trial because Farmer's double jeopardy claim was frivolous within the meaning of *United ed States v. Dunbar*, 611 F.2d 985 (5th Cir.),[6] *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980) and *United States v. Bizzard*, 674 F.2d 1382 (11th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982). We denied Farmer's motion for a stay pending appeal, clearing the way for the new trial on the substantive count. *United States v. Farmer*, No. 89–8544 (11th Cir. July 14, 1989).[7]

At the commencement of his second trial on July 17, 1989, Farmer renewed a previous motion for a change of venue from Athens to Macon, Georgia. Farmer cited the extensive publicity surrounding the case and the importance to his defense of

1. 18 U.S.C. § 241 provides, in pertinent part:

 If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State, Territory, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;

 . . . . .

 They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life.

2. 18 U.S.C. § 242 provides:

 Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if bodily injury results shall be fined under this title or imprisoned not more than ten years, or both; and if death results shall be subject to imprisonment for any term of years or for life.

 18 U.S.C. § 2 provides:

 (a) Whoever commits an offense against the United States or aids, abets, counsels, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. Roach and Sellers proceeded to trial first. On March 9, 1989, the jury acquitted them on the conspiracy count, but convicted both on the substantive count. These convictions were affirmed by a panel of this court. *See United States v. Sellers*, 906 F.2d 597 (11th Cir.1990).

4. The doctrine of collateral estoppel is included within the constitutional prohibition on double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

5. *See Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (order denying a motion to dismiss an indictment on double jeopardy grounds is immediately appealable).

6. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

7. On July 31, 1989, after the retrial on the substantive count resulted in a conviction and after Farmer filed this appeal, we granted Farmer's motion to dismiss as moot his interlocutory appeal from the district court's denial of his pretrial motion to dismiss on double jeopardy grounds. R1–151.

convincing the jurors that the state actors, Sellers and Roach, were not involved in the assault on Hill. Although the district court had granted a similar motion before the first trial, the court denied the motion and held the trial in Athens.[8] The district court also refused to allow the defense to remove for cause those potential jurors who knew about the previous convictions and sentences of Sellers and Roach.

The district court also made several evidentiary rulings which are challenged by appellant. First, the district court excluded evidence that Farmer believed that Hill was the burglar of Farmer's garage and that Hill was in fact the culprit. Second, the court excluded evidence that an unrelated charge was pending against Hill for theft from another employer. Third, the court refused to admit evidence that Hill was free on bond during the time of the events in this case. Fourth, the court excluded Hill's record of past convictions on a series of petty offenses. Finally, the district court permitted three relatives and friends of Hill to testify as to what Hill told them on the night of the assault.

The jury returned a guilty verdict on July 18, 1989. Farmer was subsequently sentenced to twelve months of imprisonment and ordered to pay $778.00 in restitution. Although the twelve month prison term represented the maximum sentence allowed under the statute, the district court stated that it arrived at this sentence by enhancing Farmer's offense level by two points for obstruction of justice under § 3C1.1 of the Sentencing Guidelines. Specifically, the district court found that appellant had obstructed justice by telling FBI agents investigating the incident that he did not hit Hill. Farmer's trial testimony was inconsistent with those statements. R6–252. Appellant argues that the sentence enhancement was improper because

his statements to the FBI officers constituted a mere denial of guilt. Farmer was denied bond pending appeal by this court on February 26, 1990, and has completed his sentence.

## III. ISSUES ON APPEAL

Farmer presents the following five issues on this appeal:

A. Whether the second trial on the substantive count was barred by double jeopardy and/or collateral estoppel.

B. Whether the district court lacked jurisdiction to proceed with the second trial pending the interlocutory appeal.

C. Whether the district court's refusal to dismiss certain jurors for cause constituted error.

D. Whether certain of the district court's evidentiary rulings were erroneous.

E. Whether the district court improperly enhanced the sentence by two levels under the Sentencing Guidelines for obstruction of justice.

## IV. DISCUSSION

A. *The Double Jeopardy and Collateral Estoppel Claims*

■ Appellant Farmer argues that Double Jeopardy[9] and the included doctrine of collateral estoppel barred the retrial on the substantive count after his prior acquittal on the conspiracy count. Farmer argues that, as a private citizen, he could not have acted under color of state law for purposes of § 242 in the absence of a conspiracy. Because he was acquitted of conspiring with state officers in the first proceeding, Farmer argues that the second trial was barred because the substantive count was the same offense as the conspiracy count for purposes of double jeopardy under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[10]

---

**8.** Farmer does not challenge the district court's venue ruling on this appeal.

**9.** The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

**10.** In *Blockburger*, the Supreme Court stated that the test for determining whether two of-

fenses are the same is "whether each provision requires proof of an additional fact which the other does not." *Blockburger* 284 U.S. at 304, 52 S.Ct. at 182 (citations omitted). In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Court held that successive prosecutions for two offenses which are the same under *Blockburger* are barred.

Farmer's collateral estoppel argument is essentially the same. Farmer argues that the prior acquittal on conspiracy prevents relitigation of what he contends is the same issue: whether appellant acted "under color of· state law."

We need not reach the substance of Farmer's double jeopardy argument. It is clear that the Double Jeopardy Clause protects a criminal defendant against *successive*, rather than simultaneous, prosecutions. *See United States v. Larkin*, 605 F.2d 1360, 1367–68 (5th Cir.1979).[11] In *Larkin*, our predecessor circuit squarely held that double jeopardy does not bar reprosecution after the first trial resulted in a mistrial even where the first trial also resulted in an acquittal on other counts considered the same offense under *Blockburger*. *Larkin* at 1367–68. The *Larkin* court reached this conclusion by applying the concept of "continuing jeopardy" to procedural facts identical to the instant case. *Id.* at 1368–69. In other words, the reprosecution on the substantive count in the instant case, as in *Larkin*, is not a successive prosecution barred by double jeopardy but rather, a mere continuation of the initial prosecution. Therefore, the second prosecution of Farmer on the substantive count does not implicate the Double Jeopardy Clause.[12]

We now turn to Farmer's collateral estoppel argument. "In order to successfully invoke collateral estoppel, a party must demonstrate: (1) that the issue in question [13] was actually raised and litigated in the prior proceeding; (2) that the determination was a critical and necessary part of the final judgment in the earlier litigation; and (3) that the issue in the later proceeding is the same as that involved in the prior action." *Delap v. Dugger*, 890 F.2d 285, 314 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990) (citing *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[1], at 759 (1988)). Because we hold that the color of law issue in the second proceeding is not the same as the conspiracy issue in the first proceeding, we reject Farmer's collateral estoppel claim.

■ On the substantive count in the indictment, Farmer was charged with aiding and abetting acts under color of state law

---

**11.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**12.** The *Larkin* court did not apply this same rationale to the collateral estoppel issue presented there, *Larkin* at 1369, despite the *Ashe v. Swenson* holding that collateral estoppel derives its constitutional vitality from the Double Jeopardy Clause. It is possible that, because both *Larkin* and the instant case involve what are in effect simultaneous prosecutions, nothing more is presented than mere inconsistent verdicts, which of course are generally not grounds for reversal of a conviction. *See, e.g., United States v. Andrews*, 850 F.2d 1557, 1561 (11th Cir.1988) (en banc), *cert. denied*, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *United States v. Colson*, 662 F.2d 1389, 1393 (11th Cir.1981); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). However, as set out in the text below, Farmer's collateral estoppel claim is easily rejected on the merits. Therefore, we do not reach the issue of whether the doctrine of collateral estoppel is limited, like its parent doctrine of double jeopardy, only to successive prosecutions.

**13.** With regard to which issue is in question here, apart from the conspiracy and color of state law elements, both § 241 and § 242 share an additional element: whether there was a willful deprivation of civil rights. If the first jury that acquitted Farmer of the conspiracy offense based its acquittal on a belief that Farmer did not deprive Hill of his civil rights, *i.e.*, that Farmer did not beat Hill, then collateral estoppel might bar the reprosecution on the substantive offense. In applying the doctrine of collateral estoppel, *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), commands us to "examine the record of a prior proceeding, taking into account pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." (citations omitted). In the context of this case, this would involve a determination of whether the evidence, pleadings, and other materials in the first trial indicate that the acquittal on the conspiracy was based on an issue other than lack of an agreement. However we need not examine the record of the first proceeding because Farmer does not argue that the first jury based its verdict of acquittal on an element other than the lack of a conspiracy.

in violation of 18 U.S.C. §§ 2 and 242. In *United States v. Lynch*, 94 F.Supp. 1011, 1013 (N.D.Ga.1950), *aff'd*, 189 F.2d 476 (5th Cir.), *cert. denied*, 342 U.S. 831, 72 S.Ct. 50, 96 L.Ed. 629 (1951), the court held that "private citizens who aid and abet state officers may be guilty under Sec. 242" if they act under color of state law.[14] In *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954), the Court stated that "[a]iding, abetting, and counseling are not terms which presuppose the existence of an agreement." *See also United States v. Bright*, 630 F.2d 804, 813 (5th Cir.1980) ("The essence of a conspiracy is proof of a conspiratorial agreement while aiding and abetting requires there be a 'community of unlawful intent' between the aider and abettor and the principal. While a community of unlawful intent is similar to an agreement, it is not the same."). Accordingly, we hold, that as a general proposition, aiding and abetting acts under color of state law is not the same as conspiring with state officials for purposes of collateral estoppel.

■ Upon review of the record, we conclude that, under the specific facts of the instant case, the prosecution attempted to prove aiding and abetting and was not attempting to prove the same conduct underlying the conspiracy in the retrial of the substantive count.[15] That the prosecution used the same evidence to prove that Farmer acted under color of state law is immaterial. *See Grady v. Corbin*, — U.S. —, —, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990).[16] The prosecution did not seek to prove to the second jury an agreement in order to establish that Farmer acted under color of state law.

That the jury was not presented with the same issue—*i.e.*, whether there was an agreement—is supported by the district court's jury charge, which is not challenged on appeal. The district court instructed the jury that "if a private citizen aids and abets a state law enforcement officer in violating the Federal law in question, the private citizen is also acting under color of state law.... Where a law enforcement officer or officers and a private citizen act together to achieve a common purpose, they act jointly, *even if the means or the methods of achieving the goal are not unanimously agreed upon.*" R6–321–22 (emphasis added).

**14.** The court further held that "[w]hile ... ordinarily a private citizen would not act under color of law, ... the presence of state officers and their active participation with other defendants who were not officers would furnish the 'color of law' required as to all defendants." In the instant case, Hill's testimony revealed that Sellers and Roach witnessed the beating and even participated in questioning Hill during the beating before stopping Farmer. As in *Lynch*, these events were enough to lend the color of state law to Farmer's conduct.

**15.** Although the government's closing argument might be helpful in discerning the precise conduct that the prosecution sought to show, appellant has not provided this court with a transcription of such argument. Therefore, we may assume that there is nothing in the closing argument to support appellant's position. *See* Fed. Rules App.Proc., Rule 10(b).

**16.** The *Grady* Court stated that

[a]s we suggested in [*Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) ], the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an 'actual evidence' or 'same evidence' test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding.

*Grady*, — U.S. at —, 110 S.Ct. at 2093 (citing *Dowling v. United States*, 493 U.S. —, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

In *Grady*, the prosecution sought to prove, in a vehicular homicide case, the same conduct underlying previous convictions for traffic offenses. In the instant case, although the government may well have presented much of the same evidence in the second trial, the prosecution sought to prove conduct which fell short of a conspiracy to show that Farmer acted under color of state law. Thus, the prosecution was not seeking to prove the same conduct. Although *Grady* was decided in the context of a pure double jeopardy claim rather than a collateral estoppel claim, we assume that the *Grady* rationale applies with equal force to the instant case because collateral estoppel, like the type of "same offense" test outlined in *Grady*, focuses on the issues actually litigated.

For the foregoing reasons, we hold that there was no double jeopardy or collateral estoppel bar to the second trial of the substantive count.

### B. Did the District Court have Jurisdiction to Proceed with the Trial Following Farmer's Notice of Appeal?

In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court ruled that an order denying a motion to dismiss an indictment on double jeopardy grounds is immediately appealable. The filing of a notice of appeal generally strips the district court of jurisdiction as to the matters appealed. *United States v. Rogers*, 788 F.2d 1472, 1475 (11th Cir.1986) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985)). However, the *Abney* Court approved the establishment by the lower courts of procedures designed "to weed out frivolous claims of former jeopardy." *Abney*, 431 U.S. at 662 n. 8, 97 S.Ct. at 2042 n. 8. Our predecessor circuit responded to the Supreme Court's invitation in *United States v. Dunbar*, 611 F.2d 985 (5th Cir.) (en banc), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). *See also United States v. Bizzard*, 674 F.2d 1382, 1385 (11th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982). Under *Dunbar*, the district court is not divested of jurisdiction if it makes written findings that the double jeopardy claim is frivolous or dilatory. *Dunbar*, 611 F.2d at 988.

In the instant case, the district court denied Farmer's pretrial motion to dismiss on double jeopardy grounds and refused to stay the second trial pending appeal. The district court found appellant's claims to be frivolous within the meaning of *Dunbar*. Although we have rejected Farmer's double jeopardy claims in this opinion, this does not necessarily mean that Farmer's double jeopardy arguments were frivolous.

Farmer argues that we must vacate his conviction for want of jurisdiction despite our holding rejecting the double jeopardy and collateral estoppel claims on the merits.

▪ Employing the concept of dual jurisdiction, the *Dunbar* court held that if an appellant's double jeopardy claim is "found [by the appellate court] not to have merit, jurisdiction for the trial which occurred during the [interlocutory] appeal would be affirmed." *Dunbar*, 611 F.2d at 989. We interpret the procedure outlined in *Dunbar* to be as follows. If the district court makes written findings that a double jeopardy claim is frivolous or dilatory, then the interlocutory appeal does not divest the district court of jurisdiction, thus permitting the retrial to proceed. The double jeopardy claim is properly heard on appeal from the defendant's conviction on retrial. If the appellate court rejects the double jeopardy claim on the merits, the jurisdiction of the district court with respect to the retrial is affirmed, without the necessity of examining whether or not the double jeopardy claim was in fact frivolous. This procedure adequately protects defendant's double jeopardy interest in not running the gauntlet of a second trial because the defendant may seek an appellate stay of the retrial in connection with the interlocutory appeal permitted under *Abney*. The appellate court's expedited procedures permit consideration before retrial of the district court's finding of frivolousness; *i.e.*, the defendant may file in the appellate court an emergency motion to stay the retrial pending consideration of the interlocutory appeal.[17]

▪ In light of our rejection of Farmer's double jeopardy claim on the merits, the district court's assumption of jurisdiction to try Farmer on the substantive count after it made written findings that Farmer's double jeopardy claim was frivolous is affirmed.

---

**17.** This procedure was followed by Farmer. He filed an interlocutory appeal and a motion to stay the retrial pending the interlocutory appeal. This court denied the motion to stay (thus ruling on the district court's finding of frivolousness). *United States v. Farmer*, No. 89–8544 (11th Cir. July 14, 1990). After the retrial, Farmer dismissed his interlocutory appeal as moot.

### C. The District Court's Refusal to Dismiss Certain Jurors for Cause

■ Appellant seems to argue that the district court erred by empaneling three jurors who knew that Sellers and Roach had been convicted and sent to prison. However, our reading of the record reveals that those jurors, potential jurors Amour, Burks and Albertson, were peremptorily dismissed.[18] R1–150. Thus, appellant must really be arguing that the district court's failure to dismiss these jurors *for cause* meant that "[w]hen the exercise of preemptory [sic] strikes began, then, the cards were stacked against the defense." Brief of Appellant at 33.

Farmer's argument that the district court's failure to strike jurors for cause forced him to "use up" peremptory strikes has been rejected by the Supreme Court. In *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the Court rejected the argument, at least outside of the death penalty context in *Gray v. Mississippi*, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987),[19] that the loss of a peremptory strike constitutes reversible error on both Sixth and Fourteenth Amendment grounds. The defendant had argued that the trial court's error in refusing to dismiss a juror for cause forced him to use a peremptory strike to correct the error, which ultimately led to a different jury composition. The Court rejected "the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Id.*, 487 U.S. at 88, 108 S.Ct. at 2278. Appellant's claim that his "jury was not impartial, therefore, must focus ... on the jurors who ultimately sat." *Id.* at 86, 108 S.Ct. at 2277.[20]

### D. The Evidentiary Rulings

■ With regard to the district court's evidentiary rulings, appellant first argues that the court erred by refusing to allow defense counsel to cross-examine Hill concerning Hill's role in the burglary of Farmer's business. Appellant argues that this evidence should have been allowed because it tended to show that Farmer's beating of Hill was spontaneous and unforseeable by Roach and Sellers, thus undermining the government's contention that Farmer was acting under color of state law. Farmer also argues that the disallowed cross-examination would have established "a motive for Hill to lie about suffering abuse at the hands of law enforcement in order to deflect attention from his guilt of the burglary." Brief of Appellant at 14.

We find that the district court did not abuse its discretion when it prevented this cross-examination.[21] Even though defense counsel was not allowed to question Hill regarding his participation in the burglary, the fact that Hill was a suspect was amply conveyed to the jury at other points in the

---

**18.** Although appellant argues that jurors who knew of Sellers' and Roach's convictions were empaneled, the government correctly points out that those jurors were removed by peremptory stikes either by the government or by the appellant. Brief of the United States at 28; R1–150. In addition, the district court gave appellant eight peremptory challenges, rather than the three prescribed by Fed.R.Crim.P. 24(b). R1–150. Furthermore, other jurors who had indicated that they had read something about the case also indicated that they could base their verdict solely on the evidence presented.

**19.** The *Ross* Court confined the holding of *Gray* to its specific context. *Ross*, 108 S.Ct. at 2278.

**20.** Appellant does not argue that the empaneled jury was not impartial, apart from those potential jurors who appellant erroneously claims were allowed to sit despite knowledge that Sellers and Roach had been convicted. Furthermore, appellant's contention that the district court exercised a double standard in excusing two jurors who expressed sympathy for Sellers and Roach is without merit. Both of those potential jurors expressed sentiments that indicated that they would have difficulty rendering a verdict free from their personal feelings about the case. *See* R5–36 to 37, 46 to 48.

**21.** The standard of review for the district court's decision on this issue is abuse of discretion, *United States v. Burke*, 738 F.2d 1225, 1227 (11th Cir.1984), unless the court limited cross-examination to an extent that infringed on Farmer's Sixth Amendment Confrontation Clause rights. *Greene v. Wainwright*, 634 F.2d 272, 275 (5th Cir.1981). Our review of the record, however, indicates that the district court permitted sufficient cross-examination of Hill to satisfy the Confrontation Clause. *See* R5–89 to 108.

trial. Counsel initially made the jury aware of Hill's possible involvement in his opening statement. SR1–3 to 4. During the prosecution's direct examination of Hill, Hill stated that he accompanied Roach to the sheriff's office to answer "a few questions about Mr. Farmer's theft." R5–74. Farmer's counsel also elicited from Hill during cross-examination that Hill was at the sheriff's office in connection with the burglary. R5–95. In addition, the government's cross-examination of Farmer revealed that Farmer knew that Hill had been transported to the sheriff's office as a suspect in the burglary of Farmer's business. R6–264. Thus, the jury was well aware that Hill was a suspect, and that Farmer knew that. Therefore, the district court did not abuse its discretion by excluding the cross-examination.

 The district court also did not err in refusing to allow the cross-examination to show that Hill had a motive to lie about the events in question. At trial and on this appeal, appellant has relied on Fed.R.Evid. 404(b) to argue that the cross-examination should have been allowed for this purpose. Although Rule 404(b) does allow evidence of "other crimes, wrongs, or acts ... as proof of motive ...," the word "motive" as used in the rule does not refer to a motive to testify falsely. *See United States v. Sampol,* 636 F.2d 621, 659 n. 24 (D.C.Cir. 1980) ("The witness's motive to testify falsely ... is merely an aspect of credibility [controlled by Fed.R.Evid. 608]. 'Mo-

tive' in the context of Rule 404(b) refers to the motive for the commission of the crime charged.").[22]

 Appellant next argues that the district court improperly refused to allow defense counsel to cross-examine Hill regarding his prior criminal record and his pending charges for theft from another employer. However, these rulings were well within the district court's discretion under Fed. R.Evid. 608 and 609. Prior misdemeanor theft convictions are usually not sufficiently probative of veracity to be admissible under Fed.R.Evid. 609(a)(2). *See United States v. Sellers,* 906 F.2d 597, 603 (11th Cir.1990) ("It is established in this Circuit ... that crimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)."). *See also United States v. Barnes,* 622 F.2d 107, 109 (5th Cir.1980) (prior shoplifting conviction not probative of truthfulness); *United States v. Ashley,* 569 F.2d 975, 979 (5th Cir.), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978) (same).[23]

 Finally, appellant challenges the district court's decision to allow testimony from three witnesses regarding what Hill told them when he arrived home after the assault at the sheriff's office. These witnesses all testified that Hill said that he had been struck repeatedly and that Roach and Sellers had stood idly by during the beating. The district judge allowed this testimony over a hearsay objection on the ground that it was permissible rebuttal, under Fed.R.Evid. 801(d)(1)(B),[24] to defense

**22.** In addition, the cross-examination regarding Hill's role in the burglary was also within the district court's discretion to exclude under Fed. R.Evid. 608 for the reasons discussed below concerning the court's proper exclusion of Hill's pending theft charge. *See infra* note 23 and accompanying text. In any event, Farmer did not offer the evidence under Rule 608 at trial.

**23.** Similarly, the district judge was well within his discretion in excluding under Rule 608 the pending theft charge against Hill and the fact that he was on bond during the events in question. *See United States v. Sellers,* 906 F.2d 597, 603 (11th Cir.1990) (related case upholding district court's exclusion of Hill's pending theft charge).

Appellant's argument that the evidence of the pending charge and the prior convictions should have been admitted to show that Hill had a

motive to fabricate his testimony for the purpose of obtaining leniency for his alleged participation in the burglary of Farmer's business is without merit. *See United States v. Cross,* 638 F.2d 1375, 1380–81 (5th Cir. Unit A 1981) ("It cannot be seriously maintained that, because [the witness] had 'other charges' pending against him ..., he was motivated to lie before the grand jury."). In a subsequent opinion, the former Fifth Circuit strengthened its holding by concluding that the admission of the pending charges constituted reversible error. *United States v. Cross,* 655 F.2d 50 (5th Cir. Unit A 1981). *See also Sellers,* 906 F.2d at 603.

**24.** Fed.R.Evid. 801(d)(1)(B) provides:

(d) *Statements which are not hearsay.* A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is

counsel's charge that Hill's testimony was recently fabricated. We will not disturb this ruling "absent a clear showing of an abuse of discretion." *United States v. Reed,* 887 F.2d 1398, 1405 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990).

Under the circumstances of this case, we find no such abuse of discretion. The district judge was not required to find an express charge of recent fabrication to admit prior consistent testimony. *United States v. Mock,* 640 F.2d 629, 632 (5th Cir. Unit B 1981). The rule itself provides that a prior consistent statement is admissible to rebut an *implied* charge of recent fabrication. Fed.R.Evid. 801(d)(1)(B). In the instant case, an implication that Hill fabricated Sellers' and Roach's involvement and the severity of the beating "fairly arises from the line of questioning ... pursued." *United States v. Baron,* 602 F.2d 1248, 1253 (7th Cir.1978), *cert. denied,* 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979). Furthermore, appellant's argument that the prior consistent statements were inadmissible because they were not made before the motive to fabricate arose has repeatedly been rejected by this circuit. *See United States v. Pendas–Martinez,* 845 F.2d 938, 942 n. 6 (11th Cir.1988) (citing *United States v. Anderson,* 782 F.2d 908, 915–16 (11th Cir.1986); *United States v. Parry,* 649 F.2d 292, 296 (5th Cir. Unit B 1981)).

### E. *The Sentencing Issue*

■ Appellant argues that the district court improperly enhanced his sentence by two levels under the Sentencing Guidelines for obstruction of justice. However, the district court ordered appellant to begin serving his twelve month sentence on October 31, 1989. R1–156. Appellant's motion for bond pending appeal was denied by this court. *United States v. Farmer,* No. 89–8868 (Feb. 26, 1990). Appellant has completed his sentence and, therefore, his appeal on this issue is moot. *See O'Neal v. United States,* 399 F.2d 635 (5th Cir.1968); *Walker v. United States,* 387 F.2d 90 (5th

Cir.1967). Furthermore, appellant has not advanced any argument that "there may be benefits ... in having his sentence reduced after he has already served that sentence...." *North Carolina v. Rice,* 404 U.S. 244, 248, 92 S.Ct. 402, 405, 30 L.Ed.2d 413 (1971).

AFFIRMED.

subject to cross-examination concerning the statement and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive,....