[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11307

_____

D. C. Docket No. 06-60322-CV-WPD

DWAYNE SHEPARD,

Plaintiff-Appellant,

versus

GEORGE DAVIS,
HALLANDALE BEACH POLICE DEPARTMENT,
THE CITY OF HALLANDALE BEACH,

Defendants-Appellees,

JASON BUDNICK,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 25, 2008)**

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

In this 42 U.S.C. § 1983 suit for unlawful arrest, Dwayne Shepard appeals the district court's order dismissing his amended complaint against Officer Jason Budnick on the basis of qualified immunity. After oral argument and for the reasons set forth more fully below, we REVERSE.

## I. BACKGROUND

In both his complaint and his amended complaint, Shepard alleges that around 9:30 p.m. on August 5, 2002, he and his wife were eating dinner in their home when Officer George Davis and Officer Jason Budnick, of the City of Hallandale Beach Police Department, knocked on their front door. Shepard arose from the dining room table, went to the door, and asked, "Who's there?" After Officer Davis responded, "Hallandale Beach Police Department," Shepard opened the door, where he faced Officer Davis, who was standing alone, just outside of Shepard's residence at Shepard's front door. Shepard asked, "May I help you?" and Officer Davis replied, "We are here to arrest you[;] [y]ou are Dwayne Shepard correct?" Shepard alleges that when he responded, "Yes I am Dwayne Shepard," Officer Budnick appeared and joined Officer Davis in the doorway. Shepard then asked the officers, "Do you have a warrant?" Neither officer answered. Instead,

2

they entered through the front door, grabbed Shepard by the arm, and pushed him into his living room and onto his sofa, which is about six feet from the front door. The officers arrested him on the sofa.

Subsequently, Shepard was charged with lewd and lascivious conduct with a child and contributing to the delinquency of a minor. After pleading no contest, Shepard was sentenced to four years probation.[1]

On March 6, 2006, Shepard filed a *pro se* § 1983 complaint against Officer Davis and Officer Budnick, alleging that they unlawfully arrested him, in violation his constitutional rights, when they entered his home and arrested him without a warrant or consent.[2] On April 28, 2006, Shepard filed an amended complaint, basically repeating the allegation in his original complaint. On September 7, 2006, Officer Budnick moved to dismiss and provided supporting documents. Officer Budnick argued that dismissal was appropriate because (1) the statute of limitations had expired by the time he was served; (2) he was not timely served

---

[1]Shepard violated his probation, however, and currently is serving a fifteen-year sentence at the Moore Haven Correctional Facility in Moore Haven, Florida.

[2]The district court construed Shepard's complaint for damages as one against the officers in their individual capacities. The district court ultimately dismissed Shepard's § 1983 claim based on a *Miranda* violation, as well as his claims against the City of Hallandale Beach and the Hallandale Beach Police Department. Shepard does not challenge this order on appeal.

Despite several attempts by U.S. Marshals, service was never effectuated on Officer Davis, who is no longer with the Hallandale Beach Police Department and could not be found at any of the addresses Shepard provided to the court. On February 27, 2007, the district court dismissed the suit against Officer Davis, without prejudice, for failure to timely serve process under Federal Rule of Civil Procedure 4(m). Shepard does not challenge this order on appeal.

3

with process; and (3) under *Byrd v. State*, 481 So. 2d 468 (Fla. 1985), and *United States v. Santana*, 427 U.S. 38, 96 S. Ct. 2406 (1976), Shepard's allegations clearly indicated that he consented to the officers' entry. On September 28, 2006, Shepard filed a sixty-one page response opposing Officer Budnick's motion, alleging that he "remained standing inside of his home" at all material times before the officers entered and arrested him. Because Shepard was *pro se* and his complaint and amended complaint were verified and had supporting documentation, the magistrate judge issued an order indicating that the motion to dismiss would be treated as a motion for summary judgment under Rule 56.

In its report and recommendation, the magistrate judge examined Shepard's "unrefuted evidence" and found no hot pursuit nor any other form of exigent circumstance to justify the officers' warrantless entry into Shepard's home, thereby distinguishing this case from *Santana*. The magistrate judge also found that the facts surrounding Shepard's arrest distinguished this case from *Byrd*, where "the arrestee Byrd opened the door, and stepped back, and did nothing in opposition, thereby effectively inviting the officers to enter." The magistrate judge recommended that summary judgment be denied. Construing the evidence in Shepard's favor, the magistrate judge pointed out that Shepard's evidence showed as follows:

> The plaintiff Shepard's evidence, which is not refuted by evidence from the defendant, is that although he knew that the person at his door [Davis] was a police officer, and that he had announced that his presence was for the purpose of conducting an arrest, he [Shepard] after opening the door had challenged the officers by demanding that they tell him if they had an arrest warrant, and they refused to answer. They then simply burst through the door, grabbing him and forcefully pushing him from the doorway into a sitting position on a couch approximately six feet away.

[alterations in original.]

On December 28, 2006, after hearing objections and performing a *de novo* review, the district court adopted the factual findings the magistrate judge made in its report and recommendation. Noting that neither party addressed the issue of qualified immunity, the court raised the issue *sua sponte*, but did not fully address it. In its analysis, the district court first declined to decide whether a constitutional violation occurred because the parties' differing versions of the arrest left "unresolved factual matters that need to be submitted to a jury."

Despite not having concluded that a constitutional violation occurred, the court proceeded to examine whether the law was clearly established in 2002 that a warrantless entry and arrest "just inside" the arrestee's home, without consent or exigent circumstances, violated the Fourth Amendment. Citing our precedent in *Bashir v. Rockdale County*, 445 F.3d 1323, 1331 (11th Cir. 2006), the district court

5

declared that "[c]learly, a reasonable law enforcement officer would have known in 2001 or 2002 that he could not enter a home and arrest a plaintiff without a warrant, exigent circumstances or consent."[3]

Nevertheless, the court concluded that it could not decide whether the law was clearly established because case law from other circuits, as well as from the Eastern District of Michigan and the Eastern District of New York, indicated "that the law on doorway arrests was not sufficiently defined." The court "question[ed] whether, under even a possible factual scenario in this case, most favorable to Shepard, Officer Budnick could have been aware of clearly established law prohibiting this doorway arrest." Consequently, the court determined that supplemental briefing on the qualified immunity issues was necessary and gave the parties until January 16, 2007 to file their briefs.

On January 22, 2007, without having received supplemental briefing, the court dismissed Shepard's amended complaint against Officer Budnick, concluding that he was entitled to qualified immunity for the reasons set forth in the December 28th order. The next day, the court learned that Shepard had filed two motions, on

---

[3]In *Bashir*, we denied qualified immunity for an officer in a § 1983 false arrest suit, holding that, under *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980), the law was clearly established that "[a] reasonable law enforcement officer . . . would have known he could not enter the home and arrest Bashir without a warrant, exigent circumstances, or consent." 445 F.3d at 1331.

January 10th and January 16th, for an extension of time to respond. The court

granted the first motion and set a new deadline of February 13, 2007 for Shepard to

file his brief.[4] On February 13, 2007, Shepard gave his responsive supplemental

briefs to prison officials to be mailed.[5] On February 27, 2007, however, before

having received Shepard's timely response, the district court entered an order

dismissing the claim against Officer Davis for failure to serve, denying all pending

motions, and closing Shepard's case. Shepard filed a notice of appeal on March

13, 2007.[6]

On appeal, Shepard argues that Officer Budnick violated his "constitutional

---

[4]After granting the first motion, the court denied the second motion as moot.

[5]Pursuant to the prison mailbox rule, Shepard's brief should be considered timely filed despite the fact that it was not actually filed with the court until February 27, 2007. *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1299 (11th Cir. 2002) ("A prisoner who [timely] delivers a document to prison authorities gets the benefit of the prison mailbox rule.").

[6]After learning that Shepard had timely mailed supplemental briefs as requested, the court entered an amended order and final judgment on April 24, 2007, again dismissing Shepard's claim against Officer Budnick. In this amended order, the court noted that Shepard's responses "add[ed] nothing factually to the sworn complaint except that Shepard was inside his apartment and not at the threshold when Officer Budnick made his entry." Yet, the district court entered this amended order after it was stripped of jurisdiction by Shepard's filing of a notice of appeal. *See United States v. Farmer*, 923 F.2d 1557, 1565 (11th Cir. 1991) ("The filing of a notice of appeal generally strips the district court of jurisdiction as to the matters appealed.").
Shepard did not file an amended notice of appeal after the district court purported to amend its order and, therefore, failed to properly perfect an appeal from the district court's amended order. For this reason, the district court's amended order is outside the scope of this appeal, and we decline to consider Shepard's arguments on appeal relating to the amended order. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002) (declining to consider the district court's ruling on Green's second post-judgment motion because Green failed to either amend his original notice of appeal or file a separate appeal).

right of expectancy of privacy" by crossing the threshold of his home without a warrant, exigent circumstances, or consent. To that end, Shepard first argues that the district court erred in finding that his arrest was a "threshold arrest" because he was not at the threshold, but inside his home. Second, Shepard argues that Officer Budnick has not disputed Shepard's allegation that the officers grabbed his arm as they crossed over the doorway into Shepard's apartment, pushed him back six feet, and arrested him in his living room. Third, Shepard asserts that exigent circumstances do not justify the warrantless, nonconsenual entry because Officer Budnick failed to show that there was insufficient time to secure a warrant. Finally, Shepard contends that the law in 2002 was very clear, precise, and well-established that, in the absence of exigent circumstances or consent, the police were required to have a warrant before entering Shepard's residence.[7]

## II. STANDARD OF REVIEW

Although the magistrate judge treated the defendant's motion to dismiss as a

---

[7]Shepard also argues on appeal that qualified immunity is an affirmative defense that Officer Budnick waived by not raising it in his motion to dismiss. Because Officer Budnick did not assert the defense in his motion to dismiss, the district court should not have "injected the issue of qualified immunity into the case" *sua sponte*. *Moore v. Morgan*, 922 F.2d 1553, 1558 (11th Cir. 1991) (citing *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986)). We conclude, however, that the defense of qualified immunity has not been waived as Budnick has yet to file an answer. *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002). Furthermore, it is undisputed that Budnick does claim the defense of qualified immunity and that both parties have adequately briefed the issue before this court. Accordingly, because qualified immunity issues should be addressed at the earliest opportunity, we address the merits of Officer Budnick's qualified immunity defense.

8

motion for summary judgment, the district court treated it more like a motion to dismiss and "dismissed" the case. Indeed, the defendant has never yet filed an answer. Thus, we review the grant of a motion to dismiss on the basis of qualified immunity *de novo* and construe the allegations in the amended complaint in the light most favorable to the plaintiff. *Long v. Slaton*, 508 F.3d 576, 579 (11th Cir. 2006).

## III.  DISCUSSION

A.  *The Qualified Immunity Framework*

Law enforcement officers are entitled to qualified immunity from actions brought under 42 U.S.C. § 1983 so long as the alleged civil damages arose from the officers' discharge of their discretionary functions and their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987). Qualified immunity does not provide a mere defense to liability, but rather a complete immunity from suit. *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S. Ct. 2151, 2156 (2001). This complete immunity from suit aims to reduce "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson*, 483 U.S. at 638, 107 S. Ct. at 3038. *Saucier* instructs that qualified immunity is protected at the earliest stages of

litigation by granting summary judgment "[i]f the law did not put the officer *on notice* that his conduct would be *clearly* unlawful." 533 U.S. at 202, 121 S. Ct. at 2156–57 (emphasis added).

To claim qualified immunity, the officer first must show that he was acting within his discretionary authority when the alleged violation occurred. *Kessinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). Once this is shown, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). To avoid summary judgment on the basis of qualified immunity, the plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). These two inquiries must be followed in this order "to set forth principles which will become the basis for a [future] holding that a right is clearly established." *Scott v. Harris*, 550 U.S. 372, 372, 127 S. Ct. 1769, 1774 (2007) (alteration in original) (quotation marks omitted).

B.    *Officer Budnick's Burden*

The district court did not err in concluding that Officer Budnick was acting within his discretionary authority. Shepard's suit arises out of Officer Budnick's

decision to arrest Shepard for lewd or lascivious conduct and contributing to child delinquency after the victim gave Officer Budnick a taped, sworn statement outlining the factual bases for the offenses.

C.  *Shepard's Burden*

Because Officer Budnick was acting within his discretionary authority, the burden shifts to Shepard to show (1) that Officer Budnick violated a constitutional right and (2) that right was clearly established at the time of the alleged violation.

1.  *Unlawful Arrest: Constitutional Violation*

Shepard's amended complaint raises a Fourth Amendment violation in alleging that Officer Budnick violated his constitutional right to privacy by entering his home without a warrant, consent, or exigent circumstances and arresting him six feet inside his living room.  Citing *Byrd*, Officer Budnick argued before the district court that by voluntarily opening the door to the officers' knock and announcement and not making an objection, Shepard consented to his entry. 481 So. 2d 468.  On appeal, Officer Budnick does not address whether his actions amounted to a constitutional violation, but rather argues that, "even assuming the facts as alleged by Plaintiff-Shepard are true, he has failed to show that the law was clearly established that a doorway arrest was unlawful in 2002."  However, under *Scott v. Harris*, we first must address whether a constitutional violation occurred

11

here.  550 U.S. at 372, 127 S. Ct. at 1774.

The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "An arrest is quintessentially a seizure of the person, and therefore subject to the Fourth Amendment's reasonableness requirement."  *McClish v. Nugent*, 483 F.3d 1231, 1238 (11th Cir. 2007).  It is a "'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980).  "This basic principle is founded on 'the very core' of the Fourth Amendment: the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."  *Bashir*, 445 F.3d at 1327 (quotation marks omitted).

Although the Fourth Amendment shields one's home from unwanted and warrantless intrusions by law enforcement officers, "the ultimate touchstone of the Fourth Amendment is 'reasonableness,' [and thus,] the warrant requirement is subject to certain exceptions."  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006).  A warrantless search made pursuant to consent is one "specifically established and well-delineated" exception.  *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967).  When the consent exception

is invoked, "an officer who conducts a warrantless search or seizure inside the home bears the burden of proving that his conduct was justified." *McClish*, 483 F.3d at 1241. For the consent exception to the warrant requirement to apply, the consent must be voluntary, or, as we have stated, "'the product of an essentially free and unconstrained choice.'" *United States v. Gonzalez*, 71 F.3d 819, 829 (11th Cir. 1996) (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)).

We also have addressed the issue of implied consent. We have consistently stated that "'whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to sanction *entry* into the home based upon inferred consent.'" *McClish*, 483 F.3d at 1241 (quoting *Gonzalez*, 71 F.3d at 830). Moreover, we have determined that a defendant's act of opening his door, stepping back, and placing his hands behind his head did not amount to implied consent to be arrested. *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986).

Construing the factual allegations in the light most favorable to Shepard, the record shows that Shepard opened the door in response to the officers' knock and announcement, asked, "May I help you?", to which Officer Davis replied, "We are here to arrest you[;] [y]ou are Dwayne Shepard correct?" After confirming his identity, Shepard asked the officers for a warrant. According to Shepard's

13

amended complaint, the officers then entered through the front door, grabbed Shepard by the arm, and pushed him about six feet into the living room. Nothing in Shepard's amended complaint places him in the threshold or inside the doorway. Rather, Shepard alleges the officers came through the door and pushed him six feet back into the living room and onto his sofa. The officers arrested Shepard on the sofa. Shepard's response to the motion to dismiss adds that he "remained standing inside of his home" at all material times. However, even ignoring that response, the amended complaint itself does not place Shepard in the threshold or inside the doorway.

Accordingly, construing the facts in the light most favorable to Shepard, Officer Budnick did not have Shepard's consent, either express or implied, to enter the home and arrest him in his living room, six feet within his home. Although one may voluntarily surrender to the police at the door, the facts alleged here show that Shepard neither surrendered to the police nor had an opportunity to do so. *See McClish*, 483 F.3d at 1241. Consequently, Officer Budnick violated Shepard's constitutional rights under the Fourth and Fourteenth Amendments.[8] We now examine whether those rights were clearly established on August 5, 2002, the date the arrest occurred.

---

[8]Officer Budnick does not argue that exigent circumstances justified his warrantless entry and arrest, and we find none from our review of the record as of this juncture.

14

2. *Unlawful Arrest: Clearly Established Law*

A constitutional right is "clearly established" when the "contours of the right [are] sufficiently clear [such] that a reasonable officer would understand that what he is doing violates that right." *Creighton*, 483 U.S. at 640, 107 S. Ct. at 3039. To avoid having his suit barred by qualified immunity, a plaintiff need not show that the officer's conduct specifically has been held unlawful, but rather that "in the light of pre-existing law the unlawfulness [was] apparent." *Id.* As the Supreme Court has explained, "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002). In our qualified immunity analysis, "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." *McClish*, 483 F.3d at 1237; *see also Marsh v. Butler County*, 268 F.3d 1014, 1032, n.10 (11th Cir. 2001) (en banc).

Officer Budnick concedes that a warrantless arrest inside a home violates *Payton*, but argues that under *New York v. Harris*, 495 U.S. 14, 110 S. Ct. 1640 (1990), "the arrest at a doorway may not." Relying also on *Byrd*, 481 So. 2d 468,

15

and *Santana*, 427 U.S. 38, 96 S. Ct. 2406, Officer Budnick argues that in 2002 the law was not clearly established that a doorway arrest would have been unlawful.

In *Santana*, a plurality of the Supreme Court held that an arrest set in motion in a public place is proper even if the arrest ultimately is made in the home. Undercover officers who had arrested one suspect involved in a drug-sting operation went to Santana's home after the arrested suspect informed them that "Mom Santana" had the marked bills. *Santana*, 427 U.S. at 40, 96 S. Ct. at 2408. As the officers pulled up to the house, they saw Santana—who was holding a brown paper bag—already standing in the doorway, so that "one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id.* at 40 n.1, 96 S. Ct. at 2408 n.1. After the officers pulled up to within 15 feet of Santana, got out of the van, and began approaching her, Santana retreated into the vestibule. *Id.* at 40, 96 S. Ct. at 2408. Under these facts, a plurality of the Supreme Court held that "a suspect may not defeat an arrest *which has been set in motion in a public place*, and is therefore proper under *Watson* [involving a warrantless arrest in a restaurant], by the expedient of escaping to a private place." *Santana*, 427 U.S. at 43, 96 S. Ct. at 2410 (emphasis added). In so holding, the plurality reasoned that, armed with probable cause, an officer could effectuate the kind of warrantless, public arrest approved in *United*

16

*States v. Watson*, 423 U.S. 411, 96 S. Ct. 820 (1976), and that a suspect could not "thwart an otherwise proper arrest" by retreating into her home. *Santana*, 427 U.S. at 42, 96 S. Ct. at 2409.[9]

Four years after *Santana*, the Supreme Court held that in the absence of consent or exigent circumstances, the warrantless search or seizure of a suspect in his home violates the Fourth Amendment. *Payton*, 445 U.S. at 590, 603, 100 S. Ct. at 1382, 1388. The Supreme Court specifically rejected the government's argument that *Watson*'s rationale applied to justify warrantless arrests effectuated in one's home because "neither history nor this Nation's experience requires us to disregard the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." *Id.* at 601, 100 S. Ct. at 1387–88. In so holding, the Supreme Court stated that "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590, 100 S. Ct. at 1382. As the *Payton* Court explained, an officer must have an arrest warrant before demanding that a suspect open his door and allow the officer's entry.

If there is sufficient evidence of a citizen's participation

_____

[9]In *Watson*, the Supreme Court approved the warrantless arrest of a defendant as reasonable under the Fourth Amendment where officers, who had probable cause based on reliable information from an informant, arrested Watson in a restaurant and removed him to the street. 423 U.S. at 412–13, 424, 96 S. Ct. at 822, 828.

> in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, *an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling* in *which the suspect lives* when there is reason to believe the suspect is within.

*Id.* at 602–603, 100 S. Ct. at 1388 (emphasis added).

In *Harris*, decided ten years after *Payton*, the Supreme Court made clear that a warrantless arrest of a suspect inside his home violates the Fourth Amendment unless exigent circumstances are present or the suspect consents. The Supreme Court was addressing whether the exclusionary rule required the suppression of statements made at the police station after an in-home warrantless arrest. *Harris*, 495 U.S. at 16, 110 S. Ct. at 1642. In that case, police officers with probable cause to believe that Harris committed a murder went to Harris's home, knocked on the door, and displayed their guns and badges; Harris allowed them to enter. *Id.* at 15–16, 110 S. Ct. at 1642. Accepting the New York Court of Appeals's conclusion that Harris did not consent to the officers' entry, the Supreme Court stated, "[i]t is also evident, in light of *Payton*, that arresting Harris in his home without an arrest warrant violated the Fourth Amendment." *Harris*, 495 U.S. at 17, 110 S. Ct. at 1642.

*Byrd*, decided by the Supreme Court of Florida in 1985, held merely that a

18

person could be arrested at the threshold of his residence if he so consented. *Byrd*, 481 So.2d at 472. In *Byrd*, the court addressed whether statements obtained after the defendant's warrantless home-arrest should have been suppressed in his subsequent criminal trial. *Id.* On the question of whether a Fourth Amendment violation occurred, the Supreme Court of Florida found the entry lawful under *Payton* by holding that "the arrest of appellant at the threshold of his residence was the result of a consensual entry." *Id.* In the court's view, without any evidence of the officers' deception or forced entry, "the appellant consented to the law enforcement officers' entry into the threshold area by voluntarily opening the door, stepping back, and standing in the threshold after knowing who was present." *Id.*

One year after *Byrd*, we rejected the government's similar argument that "because Edmondson went to the door to open it after the FBI agent ordered him to do so, stepped back, and placed his hands on his head, his actions amounted to an implied consent to be arrested." *Edmondson*, 791 F.2d at 1515. Under the same circumstances presented in *Byrd*, we held that "[a] suspect does not consent to being arrested within his residence when his consent to the entry into his residence is prompted by a show of official authority." *Id.* Furthermore, only two months before the events at issue in this case, the Supreme Court reaffirmed the central rule from *Payton*, reiterating that the "firm line at the entrance to the house . . . may

19

not reasonably be crossed without a warrant." *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459 (2002).

In the context of warrantless searches of a home, we have concluded that meaningful consent cannot be derived from the mere failure to object to a search, and that "whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to 'sanction[ ] entry into the home based upon inferred consent.'" *Gonzales*, 71 F.3d at 829 (quoting *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir.1990)).

Here, Shepard opened the door and asked the officers, "May I help you?" and "Do you have a warrant?" Construing the amended complaint in Shepard's favor, the officers in this case ignored Shepard's questions, entered through the front door, grabbed Shepard's arm and pushed him six feet in his living room and onto the sofa, where they arrested him. In essence, the officers not only failed to acquire a warrant or obtain consent before going to Shepard's house, but also forced their entry into his home. Shepard's questions about the warrant, if anything, showed a lack of implied consent.

Considering the above precedents, on August 5, 2002, the preexisting case law from the Supreme Court, this circuit, and the Supreme Court of Florida clearly established that (1) in the absence of consent or exigent circumstances, a

20

warrantless arrest made within a suspect's home is unreasonable under the Fourth Amendment; and (2) a person does not consent to being pushed back into his home and arrested in his living room by merely opening the front door in response to a knock and announcement by law enforcement officers, especially when that person immediately asks if the officers have a warrant. Applying this clearly-established law to the facts of this case, a reasonable officer would have had "fair and clear warning" that he could not go to a suspect's home, knock on his front door, wait for him to answer, and without hearing anything else besides, "May I help you . . . I am Dwayne Shepard," or "Do you have a warrant," grab the suspect's arm, push him six feet into his living room, and arrest him on his couch, *all without a warrant of any kind*. At this juncture, there is nothing in Shepard's amended complaint that places him in the threshold or inside the doorway. Simply put, Shepard's arrest was not a "threshold" arrest. Accordingly, because Officer Budnick violated Shepard's clearly-established Fourth Amendment rights by arresting Shepard in his home without a warrant, consent, or exigent circumstances, we find that he is not entitled to qualified immunity on Shepard's unlawful arrest claim.

Finally, our holding in *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007), does not support Officer Budnick's argument that the law as to arrests within the

21

home was not clearly established in August 2002. In *McClish*, we held that an officer who grabbed a suspect from within his home but pulled the suspect out of his home before making the arrest was entitled to qualified immunity. *Id.* at 1233. We recognized that a constitutional violation occurred during the non-consensual arrest,[10] reemphasizing the language from *Payton* that the "*Fourth Amendment has drawn a firm line at the entrance to the house*." *Id.* at 1240 (quotation marks omitted). Nonetheless, "we ha[d] no basis upon which to conclude that a reasonable law enforcement officer fairly would have *known* that the arrest alleged by McClish, within the house yet within reach of an officer standing outside, was unlawful." *Id.* at 1249. We therefore concluded that the illegality of McClish's arrest was not clearly established at the time of the arrest.

This case is entirely different from *McClish*. According to Shepard, he was arrested six feet inside of his house. McClish, on the other hand, was pulled outside of his house, where he then was arrested. *Id.* at 1233. As the aforementioned cases make clear, and *McClish* reaffirmed, at the time of Shepard's arrest, the law was clearly established that a warrantless arrest could not be made within the home absent consent or exigent circumstances. Officer Budnick had fair

---

[10]Notably, in determining that McClish did not consent to the arrest, we held, "McClish did not completely surrender or forfeit every reasonable expectation of privacy when he opened the door, including, most notably, the right to be secure within his home from a warrantless arrest." *McClish*, 483 F.3d at 1247.

22

warning that his conduct violated the Fourth Amendment, and he therefore is not entitled to qualified immunity.

## IV. CONCLUSION

We reaffirm that the warrantless arrest of a person in his home, with neither consent nor exigent circumstances, violates the Fourth Amendment. We repeat what we held in *Edmondson*, that is, a person does not consent to a warrantless arrest in his home merely by opening the door in response to the demands of law enforcement officers. Construing the facts, as we must, in the light most favorable to Shepard, Officer Budnick violated Shepard's Fourth Amendment rights by entering his home without a warrant, pushing Shepard six feet further into his living room, and arresting him on his couch without a warrant. A reasonable officer would have had fair and clear notice that such actions were objectively unreasonable on August 5, 2002. For these reasons, we conclude that the district court erred in granting Officer Budnick's motion to dismiss based on qualified immunity from Shepard's § 1983 suit.

REVERSED.