[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14265
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-60322-CV-WPD

DWAYNE SHEPARD,

Plaintiff-Appellant,

versus

HALLANDALE BEACH POLICE DEPARTMENT,
GEORGE DAVIS,
JASON BUDNICK,
CITY OF HALLANDALE BEACH,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 30, 2010)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After a bench trial in this 42 U.S.C. § 1983 action, Dwayne Shepard pro se appeals the district court's judgment in favor of the defendant Officer Jason Budnick. Based on the facts it found at trial, the district court concluded that Officer Budnick was entitled to qualified immunity. After review, we affirm.

## I. BACKGROUND

### A.    Pretrial Proceedings

On August 5, 2002, Officer George Davis of the Hallandale Beach Police Department entered Plaintiff Shepard's apartment and arrested him without a warrant. The defendant, Officer Budnick, was on uniformed patrol duty in the area of Shepard's apartment and acted as Officer Davis's backup during the arrest.

Shepard's pro se § 1983 complaint alleged that the officers' warrantless entry to effectuate his arrest violated his constitutional rights. The complaint sought money damages and release from prison and named as defendants Officers Davis and Budnick, the City of Hallandale Beach and the Hallandale Beach Police Department. The district court dismissed Shepard's claims against the City of Hallandale Beach, the Hallandale Beach Police Department and Officer Davis and also dismissed Shepard's claim for release from prison, leaving only Shepard's money damages claim against Officer Budnick. Later, the district court dismissed

the claim against Officer Budnick on qualified immunity grounds. On appeal, this Court vacated the district court's dismissal order as to Officer Budnick and remanded for further proceedings. See Shepard v. Davis, 300 F. App'x 832 (11th Cir. 2008).

On remand, the district court denied Officer Budnick's motion for summary judgment. The district court concluded that Plaintiff Shepard's and Defendant Budnick's contradictory deposition testimony as to Budnick's role in the arrest created a genuine issue of material fact.

## B. Documents Introduced in Bench Trial

At the bench trial, the parties stipulated to the introduction of (1) a "complaint affidavit" dated July 23, 2002; (2) a police report dated August 6, 2002; and (3) a sworn statement from Shepard's wife.

The "complaint affidavit," signed by Officer Davis, charged Shepard with lewd and lascivious offenses committed upon, or in the presence of, a person less than sixteen years of age and contributing to the delinquency of a child. In the "complaint affidavit," Officer Davis averred that on June 26, 2002 a fifteen-year-old female gave him a sworn, taped statement that she was involved in a sexual relationship with Shepard, who was 41, that Shepard gave her alcohol and drugs, that she became pregnant by Shepard, but later miscarried, and that Shepard

3

threatened to kill her family if she revealed their relationship. Underneath Officer Davis's averment, a separate, handwritten notation stated: "On 08/05/02 at 2130 hrs., your affiant Budnick made contact with the defendant at his residence. Your affiant had prior knowledge that probable cause existed. The defendant was arrested and charged as listed above." Both officers signed the "complaint affidavit."

The police report contained a narrative section completed by Officer Davis on August 6, 2002. Officer Davis stated, <u>inter alia</u>, that he arrested Shepard in his apartment without incident on August 5, 2002. The arrest was effected "with the assistance of Officer Budnick."

Shepard's wife was present when Officers Davis and Budnick arrested Shepard. According to her sworn statement, Shepard answered the door and she saw a plain-clothed man tell Shepard, "We are here to arrest you." Shepard asked if the man had a warrant, but received no answer. A uniformed police officer suddenly appeared. The two men entered the apartment. The uniformed officer grabbed Shepard by the arm and pushed him into the sofa. The plain-clothed man told Shepard that he was under arrest.

## C.   Testimony During Bench Trial

During the bench trial, both Shepard and Officer Budnick testified about Officer Budnick's role in Shepard's arrest. Shepard testified that Officer Budnick was near Officer Davis at the apartment door, heard Shepard ask Officer Davis if he had a warrant and then pushed Shepard inside his apartment and placed him in handcuffs.

Officer Budnick testified as follows. Officer Budnick was not involved in Officer Davis's investigation of Shepard. Officer Budnick did not know Officer Davis did not have a warrant and became aware of the matter only after Officer Davis requested backup. Officer Davis told Officer Budnick "to respond to the residence as his backup because he had probable cause to arrest an individual at that location known as Dwayne Shepard." Officer Budnick acted as backup because Officer Davis was in plain clothes and Shepard's apartment was in Officer Budnick's patrol zone.

When Officer Budnick arrived, Officer Davis was already at Shepard's apartment and did not give Officer Budnick any more information. As Officer Davis knocked on Shepard's apartment door and spoke with Shepard, Officer Budnick took a position in the yard so that he could see if anyone attempted to flee from the rear of the residence. Officer Budnick could not hear their conversation, but saw Shepard and Officer Davis step into the apartment while they continued

5

talking. Officer Budnick followed them into the apartment out of concern for Officer Davis's safety. Once Officer Davis told Shepard he was under arrest, Officer Budnick placed Shepard in handcuffs. Officer Budnick denied pushing Shepard into the apartment or hearing Shepard ask if Officer Davis had a warrant.

Officer Budnick explained that Officer Davis prepared the complaint affidavit on July 23, 2002, and that he (Officer Budnick) supplemented it on August 5, 2002, after the arrest.

## D.    District Court Order

Following the bench trial, the district court entered an order with its findings of fact and conclusions of law. The district court's findings credited Officer Budnick's version of events. The district court found, among other things, that Officer Budnick did not hear Shepard ask Officer Davis if he had a warrant, believed he had permission to enter Shepard's apartment and, as a uniformed backup officer, was acting on Officer Davis's instructions when he arrested Shepard, as follows:

> On August 5, 2002, Shepard and his wife were eating diner [sic] in their home when Detective George Davis, who is now apparently deceased, of the City of Hallandale Beach Police Department, knocked on their front door. Shepard arose from the dining room table, went to the door, and asked, "Who's there?" After Officer Davis responded, "Hallandale Beach Police Department," Shepard opened the door, where he faced Officer Davis who was standing alone in plainclothes, just

6

outside of Shepard's residence at Shepard's front door. Shepard asked, "May I help you?" and Officer Davis replied, "We are here to arrest you[;][y]ou are Dwayne Shepard correct?" Shepard alleges that he responded, "Yes I am Dwayne Shepard," and then asked the officer, "Do you have a warrant?" Officer Budnick who had not been involved in the investigation and was there in uniform as a back-up officer, did not hear any of the conversation, as he was approaching from the side of the house. When Shepard went inside the house, he was followed by Detective Davis. Budnick, believing that they had permission to go into the home, followed. Once inside the home, Budnick followed Davis's instructions and placed Shepard under arrest.

Budnick never heard Shepard say "Do you have a warrant?" If Shepard said that phrase, Budnick did not hear it. It was reasonable for Budnick to believe that he had permission to follow Davis into Shepard's home, as he was there as a back-up officer.

The district court concluded that, under the circumstances, Officer Budnick had an objectively reasonable belief that he was authorized to enter Shepard's home and did not violate Shepard's Fourth Amendment rights. Accordingly, the district court concluded Officer Budnick was entitled to qualified immunity. Shepard appealed.

## II. DISCUSSION

Shepard argues that the district court erred in finding in favor of Officer Budnick because Budnick's testimony was not credible. Shepard relies on his

own version of events to support his claim that Officer Budnick's actions were objectively unreasonable.[1]

Under the Fourth Amendment, warrantless searches and seizures in a home are "presumptively unreasonable." Hartsfield v. Lemacks, 50 F.3d 950, 954 (11th Cir. 1995). The presumption is rebutted, and the search or seizure is lawful, "only when some exception to the warrant requirement–such as consent or exigent circumstances– exists." Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008). Thus, "in-home arrests violate the Fourth Amendment unless they are accompanied by a warrant or an exception to the warrant requirement . . . even when the arrest is accomplished under statutory authority and when probable cause is clearly present." Id. at 1240 (quotation marks and brackets omitted). An accidental search or seizure does not violate the Fourth Amendment if the officer reasonably attempted to avoid the error. Hartsfield, 50 F.3d at 954-55. The objective reasonableness of an officer's actions in conducting a search or seizure

---

[1]We review de novo a district court's conclusions of law after a bench trial and review its factual findings for clear error. Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1230 (11th Cir. 2009). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (quotation marks omitted). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512 (1985).

will often require an examination of the information possessed by the officer at the time of the search and seizure. Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039-40 (1987).

This Court has concluded that assisting officers during a search are entitled to qualified immunity when there is no indication that they acted unreasonably in following the lead of a primary officer or that they knew or should have known that their conduct might result in a Fourth Amendment violation, even when the primary officer is not entitled to qualified immunity. See, e.g., Brent v. Ashley, 247 F.3d 1294, 1305-06 (11th Cir. 2001) (concluding officers who assisted in an unauthorized strip search and x-ray were entitled to qualified immunity because they did not act unreasonably and had no reason to suspect plaintiff's constitutional rights were being violated); Hartsfield, 50 F.3d at 956 (concluding officers who had not seen the search warrant and followed the investigating officer who obtained search warrant into the wrong house were entitled to qualified immunity).

Here, Officer Budnick responded as uniformed backup for Officer Davis, the investigating officer, and followed Officer Davis's lead in entering the apartment and handcuffing Shepard. Although Shepard contends he did not consent to Officer Davis entering the apartment, Officer Budnick observed the two

men step into the apartment while they talked.  Furthermore, Officer Budnick did not know that Officer Davis did not have an arrest warrant, had assurances from Officer Davis that there was probable cause to arrest Shepard and did not hear Shepard ask Officer Davis if he had an arrest warrant.  In short, nothing Officer Budnick knew at the time of entry would have alerted a reasonable officer in his shoes that his conduct might result in the violation of Shepard's Fourth Amendment rights.

Although Shepard attacks the district court's credibility finding, that finding was based on Officer Budnick's plausible testimony, and thus we have no occasion to disturb it.  See Anderson, 470 U.S. at 574-75, 105 S. Ct. at 1511-12 (explaining that where a district court's finding is based on the decision to credit one witness's testimony over another's and that testimony is "coherent and facially plausible" and not contradicted by other evidence, there "can virtually never be clear error").

Shepard claims that the "complaint affidavit" contradicts Officer Budnick's testimony that he was unaware of the investigation and the lack of a warrant prior to the arrest.  The record as a whole does not support this contention.  Although Officer Davis signed and dated the complaint affidavit several days prior to Shepard's arrest, the handwritten portion filled out by Officer Budnick expressly

describes Shepard's August 5, 2002 arrest in the past tense. Further, Officer Budnick explained that he completed and signed this portion of the complaint affidavit after the arrest and that he relied on Officer Davis's assurances that probable cause existed during the arrest. It was not clearly erroneous for the district court to find that Officer Budnick filled out his portion of the affidavit after the arrest had taken place. Therefore, the "complaint affidavit" does not demonstrate that Officer Budnick knew the arrest was effected without a warrant.

For these reasons, we cannot say the district court erred in concluding that Officer Budnick was entitled to qualified immunity.

**AFFIRMED.**